24 Civ. 6017 (LGS) (JW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY MACNEAL,

Plaintiff,

-against-

STATE OF NEW YORK, et al.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City, Castro, Corde,*
*Orellana, Quintuna-Guaman, and Stack*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Joseph Zangrilli*
*Tel: (212) 356-2657*
*Of Counsel: John McLaughlin*
*Tel: (212) 356-2670*
*Matter No.: 2024-075841*

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ................................................................................................ 2

LEGAL STANDARD ........................................................................................ 3

ARGUMENT

    POINT I

        PLAINTIFF FAILS TO STATE A CLAIM
        UNDER 42 U.S.C. § 1983 ........................................................... 4

        A.   The Amended Complaint Fails to State a Claim
            for Municipal Liability Under *Monell* ................................... 4

        B.   The Amended Complaint Fails to State a Claim
            for Unlawful Imprisonment ................................................... 7

            (a)   Officers Had Probable Cause to Detain
                Plaintiff for a Mental Health Evaluation
                as They Reasonably Relied on a
                Credible Report That Plaintiff was
                Suicidal ....................................................................... 7

            (b)   At a Minimum, the Individual Officers
                 Are Protected by Qualified Immunity ..................... 8

        C.   The Amended Complaint Fails to State a Claim
            for Unlawful Search ............................................................... 9

            (a)   Warrantless Entry into Plaintiff's
                Apartment Was Justified by Emergency
                Circumstances and the Officers'
                Community Caretaking Function
                During a Mental Health Crisis ................................. 9

            (b)   At a Minimum, the Individual Officers
                 Are Entitled to Qualified Immunity for
                 the Warrantless Entry ........................................... 11

        D.   The Amended Complaint Fails to State a Claim
            Based on a Retaliation Theory ............................................ 12

**Page**

POINT II

    PLAINTIFF FAILS TO STATE A CLAIM BASED ON THE AMERICANS WITH DISABILITIES ACT (ADA) ................................................................................ 15

POINT III

    PLAINTIFF FAILS TO STATE A CLAIM UNDER STATE LAW .................................................................. 16

    A.   The Amended Complaint Fails to Plead Compliance with New York's Notice of Claim Requirements ........................................................ 16

    B.   The Amended Complaint Fails to State a Claim for Defamation ................................................... 17

    C.   The Amended Complaint Fails to State Claims for Negligent or Intentional Infliction of Emotional Distress ............................................... 18

        (a)  The Alleged Conduct Does Not Rise to the Level of "Extreme and Outrageous" Behavior Required Under New York Law to Support a Claim for Intentional Infliction of Emotional Distress ............................ 18

        (b)  Plaintiff Has Not Alleged Any Negligence, nor a Special Duty or Recognized Type of Negligence That Causes Extreme Emotional Distress ...................................... 20

    D.   The Amended Complaint Fails to State a Claim for Negligent Supervision under New York Common Law ...................................................... 22

    E.   The Court Should Decline to Exercise Supplemental Jurisdiction Over Any Remaining State Law Claims ........................................ 23

CONCLUSION ............................................................................. 24

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*Anthony v. City of New York*,
    339 F.3d 129 (2d Cir. 2003)..................................................................................7, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................3, 6, 10

*Baker v. Dorfman*,
    239 F.3d 415 (2d Cir. 2000)...............................................................................20

*Barkai v. Mendez*,
    21 Civ. 4050, 2024 U.S. Dist. LEXIS 35845, 2024 WL 811561
    (S.D.N.Y. Feb. 21, 2024) ...................................................................................7, 8, 9, 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................3, 6, 10

*Bernard v. United States*,
    25 F.3d 98 (2d Cir. 1994)...................................................................................8

*Brandon v. City of New York*,
    705 F. Supp. 2d 261 (S.D.N.Y. 2010)................................................................5

*Buckner v. New York Admin. for Childs. Servs.*,
    24 Civ. 2539 (LTS), 2024 U.S. Dist. LEXIS 140152, 2024 WL 3656506
    (S.D.N.Y. July 31, 2024) ...................................................................................5

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988)...........................................................................................23

*Cash v. County of Erie*,
    654 F.3d 324 (2d Cir. 2011)...............................................................................5

*Chanko v. Am. Broad. Cos.*,
    49 N.E.3d 1171 (N.Y. 2016)..............................................................................19

*City of Canton v. Harris*,
    489 U.S. 385 (1989)...........................................................................................5, 6

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247 (1981)...........................................................................................4

*Connick v. Thompson*,
    563 U.S. 51 (2011).............................................................................................6

**Cases**                                                                                                    **Pages**

*Cox v. Warwick Valley Cent. Sch. Dist.*,
    654 F.3d 267 (2d Cir. 2011)...................................................................................13

*Crawford-El v. Britton*,
    523 U.S. 574 (1998)...........................................................................................14

*Davidson v. Bronx Mun. Hosp.*,
    64 N.Y.2d 59 (1984)..........................................................................................17

*Dean v. Town of Hempstead*,
    14-CV-4951 (MKB), 2024 U.S. Dist. LEXIS 146822, 2024 WL 3849688
    (E.D.N.Y. Aug. 16, 2024)...................................................................................16

*Disabled in Action v. Bd. of Elections in New York*,
    752 F.3d 189 (2d Cir. 2014)...............................................................................15

*Dolan v. Connolly*,
    794 F.3d 290 (2d Cir. 2015)...............................................................................13

*Fernandez v. Fernandez*,
    189 N.Y.S.3d 538 (2d Dep't 2023)......................................................................21

*Francis v. Kings Park Manor, Inc.*,
    992 F.3d 67 (2d Cir. 2021).................................................................................20

*Garcia v. CUNY, Inc.*,
    5 F.4th 57 (2d Cir. 2021) ..................................................................................13

*Gill v. Pathmark Stores*,
    237 A.D.2d 563 (2d Dep't 1997)........................................................................17

*Guan v. City of New York*,
    37 F.4th 797 (2d Cir. 2022) .......................................................................7, 9, 12

*Hamilton v. City of New York*,
    24 Civ. 2550 (CM), 2025 U.S. Dist. LEXIS 21889, 2025 WL 415836
    (S.D.N.Y. Feb. 6, 2025)......................................................................................17

*Hardy v. New York City Health & Hosps. Corp.*,
    164 F.3d 789 (2d Cir. 1999)...............................................................................16

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)......................................................................................9, 11

*Higazy v. Templeton*,
    505 F.3d 161 (2d Cir. 2007)...............................................................................14

**Cases**                                                                                    **Pages**

*Horvath v. Daniel*,
    423 F. Supp. 2d 421 (S.D.N.Y. 2006)..................................................................17

*Ivani Contracting Corp. v. City of New York*,
    103 F.3d 257 (2d Cir. 1997)...............................................................................4

*J.H. v. Bratton*,
    248 F. Supp. 3d 401 (E.D.N.Y. 2017) ...............................................................21

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007)................................................................................3

*Kerman v. City of New York*,
    261 F.3d 229 (2d Cir. 2001)........................................................9, 10, 11, 12, 14

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)................................................................................4

*MacNeal v. City of New York*,
    23 Civ. 5890 (LGS) (JW), 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666
    (S.D.N.Y. Feb. 26, 2025)....................................3, 4, 5, 7, 16, 19, 20, 21, 22, 23

*McLean v. City of New York*,
    12 N.Y.3d 194 (2009) .......................................................................................20

*Mees v. Stibbe N.Y. B.V.*,
    146 N.Y.S.3d 481 (1st Dep't 2021) ...................................................................21

*Mincey v. Arizona*,
    437 U.S. 385 (1978)...........................................................................................10

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978)..........................................................................................4-5

*Montero v. City of Yonkers*,
    890 F.3d 386 (2d Cir. 2018)..............................................................................13

*Moor v. Alameda County*,
    411 U.S. 693 (1973)............................................................................................4

*Moore Charitable Found. v. PJT Partners, Inc.*,
    217 N.E.3d 8 (N.Y. 2023).............................................................................22, 23

*Morris v. Lindau*,
    196 F.3d 102 (2d Cir. 1999)..............................................................................14

**Cases**                                                                        **Pages**

*Nieves v. Bartlett*,
    587 U.S. 391 (2019)..................................................................................14

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019)...................................................................18

*Paul v. Davis*,
    424 U.S. 693 (1976)..................................................................................17

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986)....................................................................................6

*Reichle v. Howards*,
    566 U.S. 658 (2012)..................................................................................14

*Roberts v. Spielman*,
    643 F.3d 899 (11th Cir. 2011) ...............................................................11

*Rolon v. Henneman*,
    517 F.3d 140 (2d Cir. 2008)..............................................................4, 11

*Scholastic, Inc. v. Stouffer*,
    124 F. Supp. 2d 836 (S.D.N.Y. 2000)...................................................17

*Singer v. Fulton County Sheriff*,
    63 F.3d 110 (2d Cir. 1995)........................................................................7

*Taggart v. Costabile*,
    131 A.D.3d 243 (2d Dep't 2015) ...........................................................21

*Tardif v. City of New York*,
    991 F.3d 394 (2d Cir. 2021)...................................................................16

*Thai v. Cayre Grp., Ltd.*,
    726 F. Supp. 2d 323 (S.D.N.Y. 2010)...................................................17

*Valencia v. Sung M. Lee*,
    316 F.3d 299 (2d Cir. 2003)...................................................................23

*Washington v. Napolitano*,
    29 F.4th 93 (2d Cir. 2022) ...................................................................7, 8

*Weinberg v. Mendelow*,
    979 N.Y.S.2d 29 (1st Dep't 2014) .........................................................22

**Cases**                                                                                          **Pages**

*Wolkstein v. Morgenstern,*
    275 A.D.2d 635 (1st Dep't 2000) ...............................................................20

*Yaniv v. Taub,*
    683 N.Y.S.2d 35 (1st Dep't 1998) ...............................................................22

*Ziegler v. Aukerman,*
    512 F.3d 777 (6th Cir. 2008) ...............................................................8, 10

**Statutes**

28 U.S.C. § 1367(c)(3).........................................................................................23

42 U.S.C. § 1983.........................................................................................4, 7, 14, 17

42 U.S.C. § 1988.........................................................................................4

42 U.S.C. § 12132.........................................................................................15, 16

C.P.L.R. § 3016(a).........................................................................................17

Fed. R. Civ. P. 12(b)(6).........................................................................................3

Local Civ. R. 7.2.........................................................................................4

N.Y. Gen. Mun. Law § 50-e.........................................................................................16

N.Y. Gen. Mun. Law § 50-h.........................................................................................16

N.Y. Gen. Mun. Law § 50-i.........................................................................................16

## PRELIMINARY STATEMENT

Plaintiff's lawsuit is premised on an unfounded belief that so called bad actors are utilizing City officials through a manipulation of the mental hygiene law to intimidate, abuse and retaliate against her. Plaintiff tacitly concedes that the NYPD and EMS defendants are not themselves wrongdoers but rather unwitting instruments allegedly "used" by others. Yet despite this implicit acknowledgment, Plaintiff seeks to hold these same City employees liable for diligently performing their duties in response to what they reasonably believed was a legitimate mental health crisis.

The Amended Complaint demonstrates that on May 2-3, 2023, NYPD officers responded to a credible report from the New York State Division of Human Rights that Plaintiff was a suicide risk. After diligent but unsuccessful attempts to locate Plaintiff over several hours, officers conducted a limited welfare check of her apartment. When Plaintiff finally returned home in the early morning hours, officers observed her behavior—which included elaborate explanations about purported government conspiracies against her—and reasonably determined that further evaluation was warranted. Plaintiff agreed to go to the hospital, where medical professionals conducted an appropriate assessment.

The Amended Complaint fails to state any viable claim against the City defendants. Police officers responding to a reported mental health crisis had ample probable cause to conduct a welfare check and facilitate a psychiatric evaluation. Their actions were objectively reasonable under clearly established law, entitling them to qualified immunity at minimum. Moreover, Plaintiff has not plausibly alleged any municipal policy or custom that would support *Monell* liability, nor has she stated viable claims under the ADA or state law. Accordingly, all claims against the City defendants should be dismissed.

## BACKGROUND

On or about 12:45 a.m. on the morning of May 3, 2023, Plaintiff arrived at the lobby of her apartment building, where she was met by four NYPD officers responding to what Plaintiff described as an "inaccurate and inappropriate 'suicide' call[.]" Am. Compl. at ¶¶ 183, 191. Plaintiff was "perfectly lucid" and attempted to "rationally explain" to the officers that this was not a genuine suicide call, but one whose "source and motivation" were rooted in a long-standing conspiracy by the New York City Commission on Human Rights (CCHR) and the New York State Division of Human Rights (DHR) to discriminate against her for being Caucasian. *Id.* at ¶¶ 191, 186, 274-77.

Earlier that evening at approximately 6:00 p.m. on May 2, 2023, Plaintiff had left her apartment to attend an event with friends. *Id.* at ¶ 178. At midnight, as Plaintiff was preparing to return home, she received a call from a police officer informing her that she had been reported as a suicide threat and that they had been trying to locate her. *Id.* at ¶ 180. Plaintiff alleges that before her return, her apartment was entered and searched without her consent. *Id.* at ¶¶ 203-204.

Upon arriving at her building, Plaintiff attempted to explain the situation to the officers present, who then called FDNY EMS. *Id.* at ¶¶ 109-112, 191. After 20 minutes of Plaintiff "trying to reason with" the police and EMTs, Officer Grey Castro allegedly advised Plaintiff that if she would not cooperate, she would be taken to the hospital in restraints. *Id.* at ¶¶ 114, 193-194. Plaintiff agreed to go with the EMTs, claiming she did so "out of fear" and "under duress." *Id.* at ¶¶ 116, 195. Plaintiff was then transported to Roosevelt Hospital for a mental health evaluation. *Id.* at ¶¶ 118-122, 196. After being evaluated, hospital staff found Plaintiff not suicidal but was unable to provide transportation until morning. *Id.* at ¶¶ 199-201.

Plaintiff contends that this incident constituted unlawful imprisonment, violation of her due process rights, and caused her emotional distress. *Id.* at ¶¶ 154-158. She also alleges that the City failed to properly train and supervise its employees. *Id.* at ¶ 159. The Amended Complaint also describes five previous incidents spanning from 2014 to 2022, including an April 2022 incident following communication with CCHR that is the subject of a separate lawsuit before this Court. *Id.* at ¶¶ 292-307; *see also MacNeal v. City of New York, et al.*, 23 Civ. 5890 (LGS) (JW) (S.D.N.Y.).

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), this "tenet is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and must tender more than mere "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of

alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

While courts must construe *pro se* pleadings liberally and interpret them as raising the strongest arguments they suggest, even *pro se* plaintiffs must establish that the complaint states a plausible claim for relief. *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (courts are "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions[.]") (internal quotation marks omitted).

## ARGUMENT[1]

### POINT I

### PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983[2]

#### A. The Amended Complaint Fails to State a Claim for Municipal Liability Under *Monell*[3]

Plaintiff's claims against the City must be dismissed because she fails to plausibly allege that her purported constitutional injuries resulted from a municipal policy, custom, or practice. To state a claim against a municipality under § 1983, a plaintiff must demonstrate that the alleged constitutional violation was caused by "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Monell v. Dep't of*

---

[1] Pursuant to Local Civil Rule 7.2, copies of all electronically published decisions cited herein are annexed to the copy of this memorandum that has been forwarded to Plaintiff.

[2] To the extent Plaintiff invokes 42 U.S.C. § 1988 as a separate basis for liability, this claim must be dismissed. Section 1988 does not create a private right of action or confer substantive rights, but rather addresses attorney's fees and choice of law issues in civil rights litigation. *See Moor v. Alameda County,* 411 U.S. 693, 704 n.17 (1973; *accord MacNeal v. City of New York*, 23 Civ. 5890 (LGS) (JW), 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666, at *21 (S.D.N.Y. Feb. 26, 2025).

[3] Additionally, to the extent Plaintiff seeks punitive damages against the City of New York, such claims must be dismissed as a matter of law. The Supreme Court has unequivocally held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 262 (2d Cir. 1997) (applying *City of Newport*). Therefore, Plaintiff's claims for punitive damages against the City should be dismissed with prejudice.

*Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Such a policy or custom may be established by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Buckner v. N.Y. Admin. for Childs. Servs.*, 24 Civ. 2539 (LTS), 2024 U.S. Dist. LEXIS 140152, 2024 WL 3656506, at *6 n.5 (S.D.N.Y. July 31, 2024) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

But even pleading one of the four above violations is not enough. The plaintiff must also plead facts that would show a "direct causal link between municipal policy or custom and the alleged deprivations." *City of Canton v. Harris*, 489 U.S. at 385. Thus, the plaintiff must plausibly allege that, through deliberate conduct, the city was the "moving force" behind the constitutional violation. *Id.* at 389 (internal quotation marks omitted); *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011).

The Amended Complaint fails to satisfy any of these requirements. Although Plaintiff alleges six incidents between 2014 and 2023 where she was subjected to psychiatric evaluation, she fails to identify any municipal policy or written directive requiring such action. Am. Compl. at ¶ 17.[4] Her reliance on Officer Castro's alleged statement about "policy and

---

[4] For specific details of these alleged incidents, *see* Am. Compl. ¶¶ 292-294 (February 7, 2014 incident at HRA office); *Id.* at ¶¶ 296-297 (September 28, 2016 incident at homeless shelter); *Id.* at ¶¶ 300-305 (October 25, 2016 incident at homeless shelter); *Id.* at ¶¶ 142-151 (April 2022 incident following CCHR email, and the primary subject of a related suit, *MacNeal v. City of New York, et al.*, 23 Civ. 5890 (LGS) (JW) (S.D.N.Y.)); Am. Compl. at ¶¶ 178-202 (May 2-3, 2023 incident following DHR report, and the primary subject of the instant suit).

protocol" regarding mental health calls is precisely the type of conclusory allegation that fails to satisfy the pleading requirements of *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678.

Nor has Plaintiff identified any final policymaker who directed the alleged constitutional violations. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (municipal liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy[.]"). The Amended Complaint contains no allegations regarding any decisions or actions by high-ranking City officials with final policymaking authority.

Furthermore, Plaintiff's allegations regarding prior incidents fail to establish a practice "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The sporadic incidents alleged over a nine-year period, each arising from distinct circumstances, do not demonstrate a pattern of similar constitutional violations sufficient to impute constructive notice to municipal policymakers.

Finally, Plaintiff's conclusory allegations regarding inadequate training and supervision of police officers and EMS personnel are insufficient to establish municipal liability. A failure to train claim requires allegations demonstrating that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. The Amended Complaint contains no such allegations.

**B.      The Amended Complaint Fails to State a Claim for Unlawful Imprisonment**

**(a) Officers Had Probable Cause to Detain Plaintiff for a Mental Health Evaluation as They Reasonably Relied on a Credible Report That Plaintiff was Suicidal**

Plaintiff's claim for unlawful imprisonment under § 1983 and New York common law fails because the officers had probable cause to detain her for a mental health evaluation. To state a claim for unlawful imprisonment under both federal and state law, a plaintiff must allege that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

This Court recently addressed nearly identical allegations in Plaintiff's related case, similarly finding that probable cause existed to subject her to a psychological evaluation. *See MacNeal v. City of New York*, 23 Civ. 5890 (LGS) (JW), 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666, at *15-16 (S.D.N.Y. Feb. 26, 2025) (dismissing false arrest and imprisonment claims because "Plaintiff's email threatening suicide provided CCHR and the officers a reasonable basis for believing that Plaintiff was a danger to herself"). The Court recognized that "probable cause is a complete defense to a false arrest and imprisonment claim." *Id.* at *15 (citing *Washington v. Napolitano*, 29 F.4th 93, 104 (2d Cir. 2022)).   For a mental health detention, police officers have probable cause when they have "reasonable grounds for believing that the person seized is dangerous to herself . . . ." *Guan v. City of New York*, 37 F.4th 797, 805 (2d Cir. 2022) (quoting *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003)). Here, Plaintiff concedes that the officers were responding to a report that she was suicidal. Am. Compl. ¶¶ 164, 180. Courts have consistently held that threats of suicide establish probable cause for a mental health evaluation. *See Barkai v. Mendez*, 21 Civ. 4050, 2024 U.S. Dist. LEXIS 35845, 2024 WL 811561, at *50 (S.D.N.Y. Feb. 21, 2024).

While Plaintiff contends that the suicide report was fabricated, she offers no facts suggesting that the responding officers had any reason to doubt its legitimacy at the time. It is well-established that "probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994). Furthermore, "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Washington*, 29 F.4th at 105. Given the information available to the officers—a specific report of suicidal threats requiring immediate intervention—their actions in detaining Plaintiff for evaluation were privileged as a matter of law.

The fact that Plaintiff did not believe she needed help does not negate probable cause. *See Barkai*, 2024 U.S. Dist. LEXIS 35845, 2024 WL 811561, at *50 (officers not required to accept plaintiff's assurances of wellbeing when responding to mental health crisis). "[A] mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition" *Ziegler v. Aukerman*, 512 F.3d 777, 783 (6th Cir. 2008). Moreover, to the extent Plaintiff complains about her overnight hospital stay, those allegations do not state a claim against the City defendants, as the medical evaluation was conducted by hospital staff, not City employees. Am. Compl. ¶¶ 198-202.

Because the officers had probable cause for the mental health detention, Plaintiff has failed to plead facts establishing that her confinement was not privileged—a necessary element of her unlawful imprisonment claim. Accordingly, this claim should be dismissed.

**(b) At a Minimum, the Individual Officers Are Protected by Qualified Immunity**

Even if probable cause did not exist, the individual officers would be entitled to qualified immunity. Qualified immunity shields government officials from liability for civil

damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the context of mental health detentions, officers are entitled to qualified immunity if "(1) their conduct does not violate clearly established statutory or constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Kerman v. City of N.Y.*, 261 F.3d 229, 239 (2d Cir. 2001).

Here, given the reported suicide threat that prompted their response, it was objectively reasonable for the officers to believe they had legal justification to detain Plaintiff for a mental health evaluation. *See* Am. Compl. ¶¶ 164, 180. No clearly established law would have put the officers on notice that conducting a welfare check and temporary detention in response to a credible suicide report relayed to them by a state agency would violate constitutional rights. Indeed, courts have consistently held that such actions are privileged when officers reasonably believe someone may be a danger to themselves. *See Guan*, 37 F.4th at 805.

The fact that Plaintiff verbally denied being suicidal does not strip the officers of qualified immunity, as they were not required to simply accept her assurances given the circumstances. *See Barkai v. Mendez*, 2024 U.S. Dist. LEXIS 35845, 2024 WL 811561, at *50. Therefore, even if probable cause were lacking, the individual officers are entitled to qualified immunity from Plaintiff's unlawful imprisonment claim.

## C. The Amended Complaint Fails to State a Claim for Unlawful Search

### (a) Warrantless Entry into Plaintiff's Apartment Was Justified by Emergency Circumstances and the Officers' Community Caretaking Function During a Mental Health Crisis

Plaintiff's allegations regarding the search consist entirely of speculation based on circumstantial observations made upon returning home. The Fourth Amendment protects against "unreasonable searches and seizures," and to state a claim, a plaintiff must plead sufficient

factual content to allow the court to draw a reasonable inference that defendants conducted an unreasonable search. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

By Plaintiff's own account, she was not present during the alleged search, having left her apartment at 6:00 p.m. Am. Compl. at ¶ 178. Her only allegations about the search are that upon returning home, she found "items on the floor, boxes overturned and even some banners . . . partially unrolled." *Id.* at ¶ 204. These vague assertions from someone who admittedly did not witness the search, fall well short of the pleading requirements established by *Twombly* and *Iqbal*. A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Second, even if Plaintiff had adequately pled the fact of a search, the officers' entry was justified by exigent circumstances. "The Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978); *see also Kerman v. City of New York*, 261 F.3d 229, 235 (2d Cir. 2001). As the Sixth Circuit has aptly observed: "To require that an officer who has received information from a credible source, or sources, that an individual is a suicidal risk, wait to obtain a warrant before saving that victim, would likely result in countless preventable deaths." *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (holding warrantless entry justified under the exigent-circumstances exception).

The officers' methodical and increasingly urgent efforts to locate Plaintiff before resorting to entry demonstrates their good-faith concern for her safety, not an improper investigative purpose. Officers received a report that Plaintiff was suicidal around 6:00 p.m. and spent approximately six hours attempting to locate her before entering her apartment. Am.

Compl. at ¶¶ 180-181. The Amended Complaint specifically notes officers "had been trying to locate Plaintiff for many hours," and had already attempted to contact her by phone and verify her whereabouts before resorting to entering her apartment. *Id.*; *cf. Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011) (per curiam) (finding no constitutional violation in a mental health search and seizure where there was "nothing in the record to suggest [the officer] should have doubted the information" given to him). This escalating series of less-intrusive measures before ultimately entering the apartment underscores the reasonableness of their actions under exigent circumstances.

Plaintiff's conclusory assertion that this was "not a 'wellness check'" but rather "an illegal search" is precisely the type of "legal conclusion[] masquerading as [a] factual conclusion[]" that courts need not accept as true. *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008). She offers no factual allegations suggesting why the officers' entry exceeded constitutional bounds given the emergency circumstances they confronted.

### (b) At a Minimum, the Individual Officers Are Entitled to Qualified Immunity for the Warrantless Entry

Even if Plaintiff had adequately alleged a Fourth Amendment violation regarding the warrantless entry into her apartment, the individual officers would be entitled to qualified immunity. The doctrine of qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome qualified immunity, a plaintiff must show both (1) that the defendants violated a constitutional right and (2) that the right was "clearly established" at the time of the challenged conduct. *Kerman v. City of N.Y.*, 261 F.3d 229, 235 (2d Cir. 2001).

Here, no clearly established law would have put the officers on notice that entering Plaintiff's apartment to conduct a welfare check, after receiving a report that she was suicidal and finding her absent from her residence, would violate the Fourth Amendment. Indeed, courts have routinely recognized that welfare checks in response to suicide threats fall within the emergency aid and community caretaking exceptions to the warrant requirement. *See Guan v. City of New York*, 37 F.4th 797, 804-5 (2d Cir. 2022); *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003).

The officers' belief in the lawfulness of their actions was objectively reasonable given the circumstances they faced: they had received a report from a state agency that Plaintiff was suicidal, they were unable to locate her at her residence, and they had a legitimate need to determine whether she was incapacitated inside the apartment. *See Barkai v. Mendez*, 21 Civ. 4050, 2024 U.S. Dist. LEXIS 35845, 2024 WL 811561, at *50 (S.D.N.Y. Feb. 21, 2024) (finding qualified immunity appropriate where officers acted reasonably in response to apparent mental health crisis). At minimum, officers of reasonable competence could disagree on whether the warrantless entry was justified under these circumstances, which is sufficient to confer qualified immunity. *See Kerman*, 261 F.3d at 242.

The fact that Plaintiff was ultimately found to be not at home and not suicidal does not defeat qualified immunity, as the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Guan*, 37 F.4th at 804. The officers were entitled to rely on the information available to them at the time, even if that information later proved incorrect. *See Anthony*, 339 F.3d at 137.

**D.    The Amended Complaint Fails to State a Claim Based on a Retaliation Theory**

To state a viable First Amendment retaliation claim, a plaintiff must plausibly allege that: "(1) [her] speech or conduct was protected by the First Amendment; (2) the

defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech.'" *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). The plaintiff must allege facts supporting a plausible inference that the protected conduct was "a substantial or motivating factor" for the defendants' actions. Garcia v. CUNY, Inc., 5 F.4th 57, 73 (2d Cir. 2021) (citation omitted).

Plaintiff's Amended Complaint does not allege any involvement by the City defendants in any alleged retaliatory conduct. By Plaintiff's own admission, it was employees of the New York State Division of Human Rights—not any City agency—who allegedly filed the purportedly false suicide report on May 2, 2023. Am. Compl. ¶¶ 164-66, 155-56 ("The only 'action' [DHR Program Aide Candace] Tyndall and [DHR Director Chelsea] John took, immediately following that second call, was to viciously and intentionally initiate a repeat of . . . an extremely traumatizing event for the Plaintiff. They called authorities and reported another fake suicide threat against her."). Unlike Plaintiff's previous allegations involving CCHR, recounted in the Amended Complaint as "Background"—*see* ¶¶ 93-153—this subject matter of this lawsuit involves exclusively state actors from DHR in reporting Plaintiff as allegedly suicidal. *Id.* at ¶¶ 209-10.

The City defendants—NYPD officers and EMTs—merely responded to a third-party report of a suicide threat. The Amended Complaint contains no allegations that these individual City defendants had any knowledge of Plaintiff's protected activity, let alone that such activity motivated their actions. Even if DHR employees were motivated by retaliatory animus when making the suicide report (as Plaintiff alleges), such motivation cannot be imputed to the

responding City defendants, who had no involvement in or knowledge of the underlying dispute between Plaintiff and DHR. *See Higazy v. Templeton*, 505 F.3d 161, 170 (2d Cir. 2007) (to establish liability under § 1983, a plaintiff must demonstrate each defendant's personal involvement in the alleged constitutional violation).

Furthermore, "bare allegations of malice" are insufficient to establish a retaliation claim, particularly where defendants have an independent, legitimate basis for their actions. *Kerman v. City of N.Y.*, 261 F.3d 229, 242 (2d Cir. 2001) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)); *see also Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999) ("Plaintiffs may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary."). As previously established, the officers had probable cause to detain Plaintiff for a mental health evaluation based on the suicide report they received. This independent justification defeats any inference of retaliatory motive. *See Nieves v. Bartlett*, 587 U.S. 391, 401 (2019) (probable cause generally defeats a First Amendment retaliatory arrest claim).

Even if Plaintiff had adequately pled a retaliation claim against the City defendants, which she has not, the individual officers and EMTs would be entitled to qualified immunity. No clearly established law would have put these defendants on notice that responding to a credible third-party report of a suicide threat could violate constitutional rights, even if the report itself was motivated by retaliatory animus unknown to the responding officials. *See Reichle v. Howards*, 566 U.S. 658, 664-65 (2012) (officers entitled to qualified immunity on retaliation claim where existence of probable cause was not clearly established as a bar to such claims at the time of the alleged conduct). It is not clearly established that the law requires

officers receiving emergency calls from State employees to investigate the motivations behind such calls before taking appropriate action to prevent potential self-harm.

The retaliation claim against the City defendants fails because: (1) Plaintiff attributes the allegedly retaliatory report exclusively to State actors, not City employees; (2) she fails to allege any knowledge of her protected activity by the responding City defendants; (3) any retaliatory animus by DHR employees cannot be imputed to the City defendants who acted without knowledge of such motivation; and (4) the existence of probable cause independently negates any inference of retaliatory motive. Accordingly, this claim should be dismissed.

**POINT II**

**PLAINTIFF FAILS TO STATE A CLAIM BASED ON THE AMERICANS WITH DISABILITIES ACT (ADA)**

Plaintiff's ADA claim against the City defendants must be dismissed because she fails to plead facts establishing the essential elements of such a claim. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must adequately allege that: "(1) [s]he is a qualified individual with a disability; (2) the defendant is subject to the ADA; and (3) [s]he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of [her] disability." *Disabled in Action v. Bd. of Elections in N.Y.*, 752 F.3d 189, 196-97 (2d Cir. 2014) (internal quotation marks omitted).

The Amended Complaint fails to satisfy these requirements. While Plaintiff alleges she is disabled, she does not plead facts showing how the City defendants' actions were

taken "by reason of such disability" as required by 42 U.S.C. § 12132. The Amended Complaint contains no factual content suggesting that the officers or EMTs took any action against Plaintiff because of her disability. Rather, they were responding to a third-party report of a suicide threat. Am. Compl. ¶¶ 164, 180.

This Court recently addressed a nearly identical ADA claim in Plaintiff's related case, dismissing it "because no ADA violation exists when 'an individual challenges the substance of the services provided -- rather than illegal discrimination.'" *MacNeal v. City of New York*, 23 Civ. 5890 (LGS) (JW), 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666, at *17 (S.D.N.Y. Feb. 26, 2025) (quoting *Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021)). The same reasoning applies here, as Plaintiff challenges the substance of the mental health services provided, not discrimination based on her disability.

Accordingly, Plaintiff's ADA claim should be dismissed.

## POINT III

### PLAINTIFF FAILS TO STATE A CLAIM UNDER STATE LAW

**A.    The Amended Complaint Fails to Plead Compliance with New York's Notice of Claim Requirements**

Plaintiff's state law claims must be dismissed for failure to comply with New York's mandatory notice of claim requirements. Pursuant to N.Y. Gen. Mun. Law §§ 50-e and 50-i, a plaintiff must file a notice of claim within 90 days after the claim arises as a condition precedent to maintaining tort actions against municipalities and their employees, and must also appear for an examination pursuant to General Municipal Law § 50-h if demanded by the municipality. *See Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). These requirements apply to all of Plaintiff's state law claims. *See Dean v. Town of Hempstead*, 14-CV-4951 (MKB), 2024 WL 3849688, at *94 n.43 (E.D.N.Y. Aug. 16, 2024).

16

New York law requires that a plaintiff affirmatively "plead in h[er] complaint that [s]he has served a notice of claim." *Hamilton v. City of N.Y.*, 24 Civ. 2550 (CM), 2025 U.S. Dist. LEXIS 21889, 2025 WL 415836, at *6 (S.D.N.Y. Feb. 6, 2025) (quoting *Davidson v. Bronx Mun. Hosp.*, 64 N.Y.2d 59, 61-62 (1984)). The Amended Complaint contains no allegation that Plaintiff ever filed a notice of claim with respect to her state law claims. This jurisdictional defect independently warrants dismissal of all state law claims against the City Defendants. *See Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).

**B.    The Amended Complaint Fails to State a Claim for Defamation**

Plaintiff's defamation claim must be dismissed because she fails to allege any specific defamatory statements made by the City defendants. Under New York law, the elements of a defamation claim include: "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (quoting *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000)).

As a threshold matter, defamation by itself is not actionable under § 1983. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (holding that "reputation alone, apart from some more tangible interests such as employment," does not invoke the procedural protections of the Due Process Clause). Thus, to the extent Plaintiff is attempting to assert a federal claim for defamation, it must be dismissed.

To the extent that Plaintiff raises a defamation claim under New York law, her complaint is deficient because it does not set forth "the particular words complained of." N.Y. C.P.L.R. § 3016(a). This pleading requirement is strictly enforced in New York courts. *See Gill v. Pathmark Stores*, 237 A.D.2d 563, 564 (2d Dep't 1997) (dismissing defamation claim where

the plaintiff failed to set forth the particular words alleged to be defamatory). The elements of a defamation claim are: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

Here, Plaintiff's defamation claim appears to be premised solely on the fact that her neighbors witnessed her being transported to the hospital. Am. Compl. ¶ 185-86, 321 (alleging "defamation, with damage to reputation and causing extreme embarrassment due to creating an unwarranted spectacle in the lobby of Plaintiff's home in front of friends, neighbors and her building staff"). However, she does not allege any specific false statements made by any of the City defendants to any third party. Actions are not statements, and Plaintiff does not allege that any Defendant made statements to any neighbors or building staff—the mere fact that others observed the mental health detention does not transmute it into a "statement" for purposes of defamation law.

Accordingly, Plaintiff's defamation claim should be dismissed for failure to state a claim upon which relief can be granted.

C.    **The Amended Complaint Fails to State Claims for Negligent or Intentional Infliction of Emotional Distress**

Plaintiff's claims for intentional and negligent infliction of emotional distress must be dismissed because the Amended Complaint fails to allege facts sufficient to satisfy the stringent requirements of either cause of action under New York law.

(a) **The Alleged Conduct Does Not Rise to the Level of "Extreme and Outrageous" Behavior Required Under New York Law to Support a Claim for Intentional Infliction of Emotional Distress**

Under New York law, a claim for intentional infliction of emotional distress requires a plaintiff to establish: "(i) extreme and outrageous conduct; (ii) intent to cause, or

disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178 (N.Y. 2016); *see also MacNeal v. City of New York*, 23 Civ. 5890 (LGS) (JW), 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666, at *19 (S.D.N.Y. Feb. 26, 2025). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko*, 49 N.E.3d at 1178.

In Plaintiff's related case, she set forth a nearly identical IIED claim arising from a similar mental health detention and this Court held that responding to a suicide threat and subjecting the plaintiff to a mental health evaluation does not constitute "extreme and outrageous conduct" sufficient to support an IIED claim. *MacNeal*, 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666, at *19. The Court's reasoning applies with equal force to the present case.

Here, Plaintiff alleges that officers responded to a reported suicide threat and transported her to a hospital for evaluation. Am. Compl. ¶¶ 180-196. Plaintiff offers no factual allegations that would distinguish this case from her previous one or otherwise elevate the City defendants' conduct to the "extreme and outrageous" level required for an IIED claim. Plaintiff alleges that four NYPD officers responded to a "suicide call" and met her in the lobby of her apartment building at 12:45 a.m. on May 3, 2023. Am. Compl. ¶¶ 108, 183-84. She further alleges that after attempting to "rationally explain" the situation to the officers for approximately 20 minutes, Officer Castro told her that if she didn't walk herself out to the ambulance, they would handcuff her to a stretcher. *Id.* ¶¶ 185, 192-94. Plaintiff then agreed to go to the hospital "under duress." *Id.* ¶ 195. These allegations—even accepted as true—describe a standard police

response to a reported mental health emergency, not "extreme and outrageous conduct" that would support an IIED claim.

Moreover, Plaintiff's IIED claim is also barred because it is duplicative of her false arrest claim. Under New York law, generally, "a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action." *Wolkstein v. Morgenstern*, 275 A.D.2d 635, 637 (1st Dep't 2000). Because Plaintiff's allegations supporting her IIED claim are essentially the same as those underlying her false arrest claim, the IIED claim should be dismissed as duplicative.

**(b) Plaintiff Has Not Alleged Any Negligence, nor a Special Duty or Recognized Type of Negligence That Causes Extreme Emotional Distress**

Plaintiff's negligent infliction of emotional distress claim is equally deficient. New York law recognizes two types of negligent infliction of emotional distress claims: (1) the "bystander theory" or (2) the "direct duty theory." *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). Plaintiff appears to proceed under the "direct duty theory," which requires a plaintiff to show: "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021); *see also MacNeal*, 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666, at *20.

New York law requires that a plaintiff demonstrate that the defendants owed a "special duty" to the plaintiff—a duty that "exceeds any duty to provide services to the public generally." *McLean v. City of New York*, 12 N.Y.3d 194, 199, 201 (2009). Nothing in the Amended Complaint suggests that any of the individual defendants undertook a special duty to Plaintiff or had any relationship with her beyond their general professional responsibilities when responding to the reported mental health emergency. Am. Compl. ¶¶ 180-196. Indeed, Plaintiff

admits that she had never met these officers before this encounter. *Id.* Without alleging the existence of a special duty, Plaintiff's NIED claim against the individual defendants must fail.

Furthermore, the Amended Complaint fails to state an NIED claim because it alleges only intentional, not negligent, conduct. Under New York law, "allegations of intentional conduct[] . . . cannot form the basis of a negligence claim." *Fernandez v. Fernandez*, 189 N.Y.S.3d 538, 541 (2d Dep't 2023); see also *MacNeal*, 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666, at *19 (citing *Mees v. Stibbe N.Y. B.V.*, 146 N.Y.S.3d 481, 481-82 (1st Dep't 2021) (finding "palpably insufficient" negligence claims "supported solely by allegations of intentional conduct")). Plaintiff expressly characterizes the City defendants' conduct as intentional throughout the Amended Complaint, stating that they "deliberately" transported her to the hospital despite purportedly knowing she was not suicidal. Am. Compl. ¶¶ 186-90, 193-97. She further alleges that they "completely and grossly ignored their obligation to properly assess the situation" and made "intimidating threats" to force her compliance. *Id.* ¶¶ 189, 194-95. These allegations describe deliberate, intentional conduct rather than negligent acts or omissions.

Finally, in support of the requirement that NIED claims have "circumstances providing some guarantee of genuineness of the harm" New York courts have limited these claims to specific, recognized types of negligence that obviously have the propensity to cause extreme emotional distress, "'such as the mishandling of a corpse or the transmission of false information that a parent or child had died.'" *J.H. v. Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017) (quoting *Taggart v. Costabile*, 131 A.D.3d 243, 253 (2d Dep't 2015)). Absent one of these specific categories, NIED "generally requires that the breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety." *Id.* Here, Plaintiff merely alleges

that she was frightened about potential force and worried about being stranded at the hospital without transportation home. Am. Compl. ¶¶ 195-201. A mental health evaluation conducted in response to a reported suicide threat, even if ultimately deemed unnecessary, falls far short of the extreme scenarios that New York courts have recognized as supporting NIED claims.

For these reasons, Plaintiff's claims for intentional and negligent infliction of emotional distress should be dismissed.

## D. The Amended Complaint Fails to State a Claim for Negligent Supervision under New York Common Law

Under New York law, to allege a "negligence claim relat[ing] to an employer's retention and supervision of an employee, the complaint must include allegations that [] the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Moore Charitable Found. v. PJT Partners, Inc.*, 217 N.E.3d 8, 14 (N.Y. 2023); (quoted in *MacNeal v. City of New York*, 23 Civ. 5890 (LGS) (JW), 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666, at *22 (S.D.N.Y. Feb. 26, 2025)).

The Amended Complaint is devoid of any factual allegations suggesting that the City had actual knowledge of any propensity of the individual officers or EMTs to engage in the allegedly wrongful conduct. Nor does Plaintiff plead constructive knowledge as she fails to identify any "facts or events evidencing [the employees'] propensity" to improperly detain individuals during mental health responses. *Moore Charitable Found.*, 217 N.E.3d at 15.

While constructive knowledge may be imputed in certain circumstances, the Amended Complaint lacks any allegations that would satisfy this requirement. *See Weinberg v. Mendelow*, 979 N.Y.S.2d 29, 32 (1st Dep't 2014); *Yaniv v. Taub*, 683 N.Y.S.2d 35, 38 (1st Dep't 1998). Plaintiff has not alleged any prior, similar incidents involving these specific officers or EMTs that would put the City on notice of any need for additional supervision.

Without allegations addressing "whether 'a reasonably prudent employer . . . would have been aware of the employee's propensity to engage in the injury-causing conduct,'" the negligent supervision claim cannot survive. *MacNeal*, 2025 U.S. Dist. LEXIS 35722, 2025 WL 640666, at *23 (quoting *Moore Charitable Found.*, 217 N.E.3d at 15). Accordingly, this claim should be dismissed.

**E.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Any Remaining State Law Claims**

Should the Court dismiss all of Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over any remaining state law claims. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction[.]" The Second Circuit has consistently held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia v. Sung M. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, as the case is still in its early stages and discovery has not commenced, if the Court dismisses Plaintiff's federal claims, considerations of judicial economy and comity weigh strongly in favor of declining supplemental jurisdiction over any remaining state law claims.

## <u>CONCLUSION</u>

For the reasons set forth herein, defendant City of New York respectfully requests that the Court grant its motion to dismiss all claims against the City, Chandler Castro, John Corde, Christian Orellana, Jose Quintuna-Guaman, and Ryan Stack in the Amended Complaint, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:        New York, NY
              April 7, 2025

                              MURIEL GOODE-TRUFANT
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants City, Castro, Corde,*
                                *Orellana, Quintuna-Guaman, and Stack*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2670

                          By: */s/ Joseph Zangrilli*
                              _____
                                Joseph Zangrilli & John McLaughlin
                                *Senior Counsel*
                                Special Federal Litigation

Cc:    **VIA ECF**
       All counsel of record