UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY MACNEAL,

              Plaintiff,

    v.

THE STATE OF NEW YORK, THE CITY OF
NEW YORK, CHELSEA JOHN, GINA
MARTINEZ, ELENA PERLONGO, JOHN
HERRION, CANDACE TYNDALL,
ELIZABETH ORTIZ, JOHN CORDE, GREY
CASTRO, CHRISTIAN ORELLANA, JOSE
QUINTUNA-GUAMAN, FRANK TARSILLO
AND RYAN STACK,

              Defendants.

No. 24-cv-06017 (LGS)(JW)

**MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS'
MOTION TO DISMISS**

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8528

ELIZABETH A. FIGUEIRA
Assistant Attorney General
    *Of Counsel*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .............................................................................. 1

FACTUAL BACKGROUND .................................................................................. 2

      A.    DHR Investigates Plaintiff's Complaint ................................................ 2

      B.    The Amended Complaint Discusses the DHR Investigation As Well As Plaintiff's Housing Issues and Other Complaints ............................... 8

ARGUMENT ........................................................................................................ 9

I.      Standards of Review ..................................................................................... 9

      A.    The Court May Look Beyond the Allegations Contained in Plaintiff's Complaint to Analyze Subject Matter Jurisdiction ............................ 9

      B.    Analysis of Fed. R. Civ. P. 12(b)(6) Motions and the Permissibility of Judicial Notice ............................................................................... 10

II.     Consideration of DHR's Documents Is Appropriate on a Motion To Dismiss ............ 12

III.    Sovereign Immunity Applies to the Official Capacity Claims ..................................... 13

IV.    Dismissal is Warranted for Plaintiff's Section 1981 Claim ........................................... 14

V.     Dismissal is Warranted for Plaintiff's Section 1983 Claim ........................................... 15

VI.    Dismissal is Warranted For Plaintiff's Section 1985 and Section 1986 Conspiracy Claims ............................................................................................. 17

      A.    Plaintiff Has Failed to Allege a Conspiracy ....................................... 17

      B.    The Section 1986 Claims Also Fail ..................................................... 19

VII.   The Section 504 Claim Also Fails ............................................................................... 20

VIII.  There is No Basis for This Court to Exercise Supplemental Jurisdiction ...................... 20

CONCLUSION ...................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                              **Page(s)**

*Agu v. Rhea*,
    No. 09-CV-4732, 2010 WL 5186839 (E.D.N.Y. Dec. 15, 2010) ...........................................11

*Alsaifullah v. Furco*,
    No. 12-CV-2907, 2013 WL 3972514 (S.D.N.Y. Aug. 2, 2013)............................................11

*Artis v. Dist. of Columbia*,
    138 S. Ct. 594 (2018)..................................................................................................21

*Ashcroft v. Iqbal*,
    566 U.S. 662 (2009)................................................................................................. 10-11

*Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
    968 F.2d 196 (2d Cir. 1992).........................................................................................10

*Balogun v. New York State Div. of Hum. Rts.*,
    No. 20 CIV. 10484 (LGS), 2022 WL 4292704 (S.D.N.Y. Sept. 16, 2022)............................13

*Bellin v. Zucker*,
    6 F.4th 463 (2d Cir. 2021) .........................................................................................11

*Benzinger v. NYSARC, Inc. New York City Chapter*,
    385 F. Supp. 3d 224 (S.D.N.Y. 2019).........................................................................19

*Boddie v. Schnieder*,
    105 F.3d 857 (2d Cir. 1997)........................................................................................19

*Brown v. City of Oneonta*,
    221 F.3d 329 (2d Cir. 2000)..................................................................................... 18-19

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..................................................................................... 11-12

*Collins v. City of New York*,
    156 F. Supp. 3d 448 (S.D.N.Y. 2016)..........................................................................13

*Corley v. Vance*,
    365 F. Supp. 3d 407 (S.D.N.Y. 2019)..........................................................................21

*Degrafinreid v. Ricks*,
    417 F. Supp. 2d 403 (S.D.N.Y.2006)...........................................................................20

*DeLuca v. AccessIT Grp., Inc.*,
   695 F. Supp. 2d 54 (S.D.N.Y. 2010)................................................................12

*Doe v. Sacks*,
   714 F. Supp. 3d 402 (S.D.N.Y. 2024)..............................................................21

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006).........................................................................................15

*Eagleston v. Guido*,
   41 F.3d 865 (2d Cir. 1994)......................................................................... 15-16

*Evans v. N.Y. Botanical Garden*,
   No. 02-cv-3591, 2002 WL 31002814 (S.D.N.Y. Sept. 4, 2002) ..........................12

*Gadson v. Goord*,
   No. 96-CV-7544, 1997 WL 714878 (S.D.N.Y. Nov. 17, 1997)....................... 11-12

*Gil v. Mooney*,
   824 F.2d 192 (2d Cir. 1987)..............................................................................12

*Gollomp v. Spitzer*,
   568 F.3d 355 (2d Cir. 2009)..............................................................................13

*Hafer v. Melo*,
   502 U.S. 21 (1991).............................................................................................13

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)....................................................................... 10-11, 20

*Hickey v. City of N.Y.*,
   No. 01-CV-6506, 2004 WL 2724079 (S.D.N.Y. Nov. 29, 2004)..........................18

*Hu v. City of New York*,
   927 F.3d 81 (2d Cir. 2019)................................................................................11

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*,
   968 F.2d 286 (2d Cir. 1992)..............................................................................18

*Keitt v. New York City*,
   882 F. Supp. 2d 412 (S.D.N.Y. 2011).............................................................14, 20

*Kistler v. Stanley Black & Decker, Inc.*,
   No. 22-CV-966, 2024 WL 3292543 (D. Conn. July 3, 2024) ..............................12

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ........................................................................... 9-10

*Mamot v. Board of Regents*,
    367 F. App'x 191 (2d Cir. 2010) ........................................................................ 14

*Mira v. Kingston*,
    715 F. App'x 28 (2d Cir. 2017) .......................................................................... 19

*Murphy v. City of Stamford*,
    634 F. App'x 804 (2d Cir. 2015) ........................................................................ 19

*Nat'l Ass'n for Advancement of Colored People v. Merrill*,
    939 F.3d 470 (2d Cir. 2019) ............................................................................... 13

*New York State Nat. Org. for Women v. Pataki*,
    261 F.3d 156 (2d Cir. 2001) ................................................................................. 3

*Ostrer v. Aronwald*,
    567 F.2d 551 (2d Cir. 1977) ............................................................................... 16

*Quern v. Jordan*,
    440 U.S. 332 (1979) ........................................................................................... 14

*Reynolds v. Army and Air Force Exch. Serv.*,
    846 F.2d 746 (Fed. Cir. 1988) ............................................................................ 10

*Rodriguez v. City of N.Y.*,
    No. 05-CV-10682, 2008 WL 4410089 (S.D.N.Y. Sept. 25, 2008) .................... 17-18

*Romer v. Morgenthau*,
    119 F. Supp. 2d 346 (S.D.N.Y. 2000) .............................................................. 17-18

*Ruston v. Town Bd. for Town of Skaneateles*,
    610 F.3d 55 (2d Cir. 2010) ................................................................................. 10

*Sahni v. Staff Attorneys Ass'n*,
    No. 14-cv-9873, 2016 WL 1241524 (S.D.N.Y. Mar. 23, 2016) ........................... 12

*Salem v. Paroli*,
    260 B.R. 246 (S.D.N.Y. 2001) ............................................................................ 10

*Samuels v. Air Transp. Loc. 504*,
    992 F.2d 12 (2d Cir. 1993) ................................................................................. 11

*Shipping Fin. Servs. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998)................................................................10

*Thomas v. DeCastro*,
    No. 14-CV-6409 (KMK), 2018 WL 1322207 (S.D.N.Y. Mar. 13, 2018) ..............................18

*Turkmen v. Hasty*,
    789 F.3d 218 (2d Cir. 2015) judgment rev'd in part, vacated in part on other grounds
    sub nom. *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). .................................18

*Wang v. Office of Professional Med. Cond., N.Y.*,
    354 F. App'x 459 (2d Cir. 2009) ...........................................................14

*Webb v. Goord*,
    340 F.3d 105 (2d Cir. 2003)............................................................ 17-18

*Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000).................................................................10

## Constitutions

U.S. const., am XI ........................................................................... 13-14, 20

U.S. const. am XIV ...............................................................................13

## Federal Statutes

28 U.S.C.
    § 1367(c) ................................................................................21

29 U.S.C.
    § 794.................................................................................2, 20

42 U.S.C.
    Chapter 126.............................................................................15
    § 1981...............................................................................2, 14-15
    § 1983.............................................................................. 1, 14-15
    § 1985........................................................................... 1-2, 14, 17, 19
    § 1985(2)................................................................................17

    § 1985(3)............................................................................. 17-18
    § 1986.............................................................................1-2, 14, 17-19
    § 1988..................................................................................2
    § 3601.................................................................................15

Americans with Disabilities Act ................................................................. passim

**State Statutes**

N.Y. Exec. L.
    § 295 .................................................................................................... 2-3, 5
    § 297 ...........................................................................................................3
    § 298 ...........................................................................................................8

**State Regulations**

9 NYCRR 465.6 ............................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(1) ...........................................................................9, 13

Fed. R. Civ. P. 12(b)(6) ................................................................... 10-11, 15

**Miscellaneous Authorities**

https://dhr.ny.gov/complaint#investigative .....................................................3

Defendants the State of New York ("State") and Chelsea John, Gina Martinez, Elena Perlongo, John Herrion, Candace Tyndall, and Elizabeth Ortiz, sued in their official and individual capacities as employees of the New York State Division of Human Rights ("DHR") (the "DHR Defendants") (collectively, "State Defendants"), by and through their attorney, Letitia James, New York State Attorney General, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Kelly MacNeal's ("Plaintiff") Amended Complaint, dated November 29, 2024. ECF No. 37 ("AC").

## PRELIMINARY STATEMENT

The Amended Complaint details Plaintiff's troubled relationship with her landlord and neighbors and alleges that they discriminated against her due to a disability that causes her to be sensitive to odors, specifically smoke. These issues eventually led her to file a complaint with U.S Department of Housing and Urban Development ("HUD"), which was forwarded to DHR for investigation in April 2023. DHR Defendants responded to Plaintiff's inquiries and conducted a multi-month investigation as part of their agency duties. That investigation culminated with the issuance of a Determination and Order After Investigation, dated May 10, 2024 ("DHR Order"). That DHR Order concluded that there was no probable cause for the complaint of housing discrimination based on disability and dismissed the case.

Plaintiff's lawsuit essentially contends that State Defendants violated her constitutional rights by not finding in her favor in the DHR Order. In her operative Amended Complaint, she pursues claims under several statutes: 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1985 ("Section 1985"), 42 U.S.C. § 1986 ("Section 1986") and the

Section 504 of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 794 ("Section 504").[1] Plaintiff also references the Americans with Disabilities Act ("Act") and the Fair Housing Act ("FHA") within the context of an "equal protection" claim, *see* AC ¶¶ 310, 312, but does not appear to allege a claim under those statutes.[2] She also sues under common law for intentional and negligent infliction of emotional distress, retaliation, negligent supervision, and "lack of appropriate training." *Id.* at ¶¶ 313-315. These claims should be dismissed for multiple reasons. *First*, sovereign immunity bars all claims against State Defendants in their official capacities. *Second*, the Section 1981 claims fail as Plaintiff only speculates as to racial animus and fails to allege a contractual relationship. *Third*, the Section 1983 claim fails because Plaintiff fails to allege that DHR Defendants violated any constitutional rights through their investigation and issuance of the DHR Order. That Plaintiff is dissatisfied with the outcome cannot form the basis of a viable claim. *Fourth*, the conspiracy claims pursuant to Sections 1985 and 1986 fail because Plaintiff has not alleged any details of the alleged conspiracy with specificity. *Fifth*, the Section 504 claim fails because the Amended Complaint reflects an accommodation during the investigation process and an absence of any viable allegations of disability discrimination. *Sixth*, and finally, there is no reason for this Court to exercise supplemental jurisdiction for the state common law claims.

## FACTUAL BACKGROUND

### A. DHR Investigates Plaintiff's Complaint

DHR receives and investigates complaints alleging violations of the New York State Human Rights Law. N.Y. Exec. L. § 295. Promulgated in 1945, New York's Human Rights Law

---

[1]    Plaintiff references 42 U.S.C. § 1988, *see* AC ¶¶ 313-315, which will be not addressed, as that section pertains to jurisdiction and fees.

[2]    If the court interprets the Amended Complaint as alleging an ADA claim, State Defendants refer to the grounds for dismissal identified in their earlier letter to the extent that the Court interprets Plaintiff as having articulated a claim under that statute. *See* ECF No. 23 at 2-3.

prohibits discrimination based on, among other grounds, age, race, creed, color, national origin, sex, disability, genetic predisposition, carrier status, marital status, and other protected characteristics. *See id*. § 296. An individual who is aggrieved by instances of discrimination prohibited under the Human Rights Law may elect to seek redress in either an administrative or a judicial forum. *New York State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 160-161 (2d Cir. 2001). DHR handles the administrative adjudication of claims of discrimination pursuant to the Human Rights Law. *See* N.Y. Exec. L. § 297. Any person aggrieved by an unlawful discriminatory practice may file a verified complaint in writing, stating the name and address of the person alleged to have committed the unlawful discriminatory practice complained of and the particulars thereof. N.Y. Exec. L. § 297.

After receiving a complaint, DHR shall promptly serve a copy upon the respondent, and all persons it deems to be necessary parties, and conduct prompt investigation. *Id*. Within the *discretion of the regional director, commissioner*, *or general counsel,* DHR conducts investigations by methods of written inquiry, field investigation and investigatory conference. *See* 9 NYCRR 465.6 (emphasis added); *see also* https://dhr.ny.gov/complaint#investigative.

As relevant here, DHR has a work share arrangement with the U.S Department of Housing and Urban Development ("HUD"). Declaration of Chelsea John ("John Decl."), ¶ 3. DHR receives a copy of the referral letter from HUD. *Id*. Until 2024, the former Director of Federal Contracts, Iris Carrasquillo, was the designated contact to receive referrals from HUD. *Id.* Defendant John now serves as the designated contact. *Id.* HUD sends cases to the Housing Investigation Unit ("HIU") to dual-file and investigate on behalf of HUD. *Id.*

Plaintiff alleges that HUD referred her complaint to DHR on April 10, 2023, and claims that this referral required DHR to act within 30 days. AC ¶ 154. The letter from HUD to Plaintiff

informed her that if DHR "fails to begin processing this complaint within 30 days, HUD may take up the complaint again." John Decl., ¶ 4, Ex. 1. The HUD letter also informed Plaintiff of the conciliation process that DHR would attempt during its investigation of her complaint.[3] *Id.*

In or around mid- to late April, Plaintiff followed up with Defendant John, who was Director of HIU, and spoke with Defendant Tyndall. AC ¶¶ 155-56. Plaintiff alleges that after a follow-up conversation on May 2, 2023, Defendants John and Tyndall told her that her case would be addressed in the order submitted and that "there was no disability accommodations available to prioritize any case based on alleviating a claimant's physical pain." *Id.* ¶¶ 157-158. Plaintiff further alleges that she was getting "vibes" that DHR was "blowing her off" in a similar manner that CCHR [New York City Commission on Human Rights] had done so the year before. *Id.* ¶ 162.

Plaintiff further alleges that during this May 2, 2023 call, she "reminded" Defendants Tyndall and John of the "looming 30 day deadline and begged them to at least meet that and take action to put an end to the pain she was experiencing everyday." *Id.* ¶ 163. Plaintiff then alleges that Defendants Tyndall and John "called the authorities and reported another fake suicide threat against her." *Id.* ¶¶ 164, 166, 169. DHR records reflect that Defendant John called the NYPD to request a "welfare check" for Plaintiff after statements that Plaintiff made voluntarily to Tyndall by phone. John Decl., ¶ 10, Ex. 6 at 2. As to that check, Plaintiff speculates in the Amended Complaint that Defendant John retaliated against her – through the welfare check – for Plaintiff's comments about Defendant John's previous employer CCHR. AC ¶¶ 171-172. Later in the pleading, Plaintiff acknowledges that she "was unsure whether the intentionally false report was made by her vindictive landlord, her abusive neighbor, or the employees of DHR, with whom she had spoken earlier in the day. *Id.* ¶ 187. Elsewhere in the Amended Complaint, Plaintiff details the

---

[3]     HUD sent similar letters outlining the process to the respondents. John Decl., ¶ 5, Ex. 2.

evening of May 2, 2023, including the "suicide call," her subsequent hospital visit, and her reaction to those alleged events. *Id.* ¶¶ 178-208.

On May 16, 2023, and consistent with its investigative processes, DHR mailed Plaintiff a letter advising her to review and sign the complaint. John Decl. ¶ 6, Ex. 3. *See also* AC ¶ 212 (noting a May 17, 2023 date for DHR mailing a complaint for Plaintiff to sign). The Amended Complaint does not attach the complaint that she eventually filed (the "DHR Complaint"), which was received June 6, 2023. John Decl. ¶ 7, Ex. 4. Plaintiff then detailed additional calls on May 18 and May 19, her provision of additional materials to DHR, and her speculation as to DHR's motives. AC ¶¶ 213-217.

In the DHR Complaint, Plaintiff claimed that her landlord and associated parties had violated the Human Rights Law by committing an "unlawful discriminatory practice relating to housing… because of disability." John Decl. ¶ 7, Ex. 4. at 1. Plaintiff included an attachment alleging that her landlord had retaliated against her after she reported to HUD, and that it had included "illegal language in her first lease renewal" and after she "complained about the incompetence of the superintendent after numerous leaks in her unit destroyed the walls" several years ago. *Id.* at 8. She further claimed that her landlord failed to enforce its "smoke free" policy with respect to Plaintiff's neighbor despite many complaints. *Id.*

As to her disability, Plaintiff asserted that she had a traumatic brain injury and orthopedic injuries and provided a release from a treating physician. *Id.* at 4. The DHR Complaint did not mention her racial or ethnic background or the racial or ethnic background of her neighbor or any representative of the landlord. *Id.* at 8, 10-16. The absence of a racial component was consistent with the HUD form complaint that had been incorporated in the DHR Complaint. *Id.* at 9.

Upon receipt of Plaintiff's complaint, DHR processed the case as per standard procedures. John Decl., ¶ 8. For example, on July 21, 2023, Plaintiff and Defendant Tyndall exchanged emails concerning her pending investigation, and during a call on August 2, 2023, Plaintiff reiterated that she was being "'abused' and retaliated against." *Id*., Ex. 5 at 9-13.

On August 3, 2023, DHR advised the parties by mail that the investigation had not been brought to a conclusion within 100 days. *Id*. ¶ 11, Ex. 7. The letter cited four reasons among the 13 total options:

a.   conduct more investigation because the information gathered so far shows a need for more investigation and analysis;

b.   determine whether there is further support for information provided by parties or witnesses;

c.   conduct a legal analysis of information gathered during the investigation; and

d.   finish writing a report of the investigation.

*Id*. Defendant Perlongo then contacted Plaintiff in or around September 14, 2023 for an interview, and the two spoke. AC ¶¶ 218-221. On October 10, 2023, DHR contacted Plaintiff for a rebuttal to her landlord's response, which was initially due on October 23, 2023. *Id*. ¶¶ 220-222. *See also* John Decl., Ex. 5 at 27-30. Plaintiff then sought an accommodation to submit her rebuttal, and her initial request to Defendants Perlongo and John was routed to Defendant Herrion. *Id*., Ex. 5 at 30-40. Defendant Herrion approved the extension. AC ¶ 229. Plaintiff submitted her rebuttal on or about November 29, 2023. John Decl., Ex. 5 at 40. Throughout DHR's investigation, Plaintiff alleges that the HIU "treat[ed] Plaintiff like an ordinary tenant with a smoke complaint," and that the agency "showed no comprehension of the specific protections covered by the intersection of ADA and FHA law which did indeed offer the disabled Plaintiff legal rights and protections." AC ¶ 232. DHR continued its investigation thereafter. *See* John Decl., Ex. 5 at 41-44.

On April 11, 2024, Plaintiff alleges that Defendant Ortiz "handed down a determination of 'no probable cause,'" dismissing her claims, which "effectively denied her equal protection under the laws, which were meant to protect her in her vulnerable disabled state." AC ¶¶ 243, 246. Plaintiff then objected to DHR's analysis, calling it "sloppy" and "flawed", and claiming that it "contained numerous errors of fact and failed to address a single shred of Plaintiff's evidence." *Id.* ¶ 246. *See also id.* ¶¶ 253-262 (detailing "evidence" that Plaintiff alleges was not considered).

After receiving the decision, Plaintiff contacted Defendant Herrion and "enumerated the omissions, inaccuracies, and senseless logic," which caused the decision to be recalled. AC ¶¶ 263-264. On May 10, 2024, Defendant John issued the DHR Order. AC ¶ 265. *See also* John Decl., ¶ 12, Ex. 8. The DHR Order held that a "no probable cause determination is warranted because the investigation did not support [Plaintiff's] allegations that Respondents either failed to accommodate her or treated her in the manner that Complainant alleged because of her disability." John Decl., ¶ 12, Ex. 8 at 3. The DHR Order explained that Respondents had engaged in "the interactive process" with Plaintiff and offered various remedies, all of which were rejected by Plaintiff as insufficient to "remedy" her complaint. *Id.* The DHR Order reflected that Plaintiff believed that the only acceptable remedy would have been to "evict" the problematic neighbor. *Id.* at 2. The DHR Order also reflected DHR's independent investigation, including interviews with other tenants and third parties, to assess the merits to Plaintiff's allegations. *Id.* at 3-4. That investigation reflected some concerns about the construction and venting of Plaintiff's building, but no allegations of disability discrimination. *Id.*

Plaintiff alleges that the DHR Order "did nothing but[] correct DHR's blatant sloppy errors in reciting the facts and added a single paragraph listing Plaintiff's inventory of evidence" before dismissing the complaint in its entirety. AC ¶ 265. Upon review of DHR's records, Plaintiff did

not appeal the DHR Order to New York State Supreme Court pursuant to N.Y. Executive Law §298. John Decl., ¶ 13.

### B.  The Amended Complaint Discusses the DHR Investigation As Well As Plaintiff's Housing Issues and Other Complaints

On August 1, 2024, Plaintiff filed her Complaint in this Court, and on November 29, 2024, she filed her Amended Complaint. ECF Nos. 1, 37. In that pleading, Plaintiff alleges that she resides in an apartment "overseen" by Housing Preservation and Development, which has been designed as both an "affordable unit" and also a "disability unit." AC ¶¶ 93-98. She further alleges that her lease contains a "no smoking" clause that classifies the entire building as "smoke-free." *Id*. ¶ 98. She also alleges that she has a "brain injury" that makes her susceptible to migraines and vertigo, which are "triggered by exposure to chemical irritants including cigarette smoke and vape fumes." *Id*. ¶ 100.

Plaintiff then describes the history of her interactions with her landlord and other building personnel. *See e.g.*, AC ¶¶ 114-125. After a period of respite, Plaintiff alleges that fumes had returned as a daily occurrence in or around June 2021, despite a "no smoking" rider in the leases. *Id*. ¶ 126. Plaintiff alleges that building management refused to intervene to stop the source of the fumes. *Id*. ¶¶ 127-135.

Plaintiff then filed a complaint with CCHR in or around March 2022, "seeking protection and assistance with filing Americans with Disabilities Act (ADA) and Fair Housing Act (FHA) claims against her landlord." *Id*. ¶¶ 137-38. CCHR later allegedly dismissed her request to file a formal complaint. *Id*.¶ 139. Plaintiff then alleges that when she told CCHR that "she should just kill herself" they sent NYPD to take her for a psychological evaluation. *Id*. ¶¶ 142-146.

The Amended Complaint also discusses Plaintiff's theories about the "motives" of DHR Defendants and others. Plaintiff alleges that the reason behind the "false reporting" by DHR was

a desire to treat Plaintiff's claims "with contempt as imaginary, unimportant or perhaps born of exaggerated expectations of 'white privilege' that needed to be deflated." *Id*. ¶ 175. Plaintiff further alleges that the DHR Order "spent an inordinate amount of time actually attacking the Plaintiff and insinuating that Plaintiff was guilty of harassing the 'elderly' Hispanic woman living in the apartment beneath her." *Id*. ¶ 269.  Plaintiff alleges that the mention of the race of another party represented an "unlawful racial bias is depriving the Plaintiff equal protection under the law concerning her disability rights, while at the same time discriminating against Plaintiff based on her Caucasian race." *Id*. ¶ 274. She alleges that DHR was more concerned with the rights of Plaintiff's neighbors than her rights, and claims that "[s]uch an irrational, broad and complete denial of protection for a disabled Plaintiff must be motivated by something. Plaintiff contends that the most likely reason is born from the stated anti-Caucasian racist priorities espoused by both CCHR and DHR… hence racial discrimination. *Id*. ¶ 277.

As to Defendant Perlongo, Plaintiff alleges that she "deprioritized" Plaintiff's DHR Complaint at the direction of Defendant John. *Id*. ¶ 57. As to Defendant Ortiz, Plaintiff only alleges that she issued the initial determination in April 2024, which was later replaced by the DHR Order. *Id*.  ¶ 246. As to Defendant Martinez, Plaintiff alleges that she overrode Defendant Herrion's "good faith efforts to assist her." *Id*. ¶ 69. She further suggests that she is "happy to drop any claim against" Defendant Herrion. *Id.*

## ARGUMENT

## I.    STANDARDS OF REVIEW

### A.  The Court May Look Beyond the Allegations Contained in Plaintiff's Complaint to Analyze Subject Matter Jurisdiction

A claim is properly dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) when "the district court lacks the statutory or constitutional power to adjudicate

it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). While a court must accept as true all material factual allegations in the complaint, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). Plaintiff bears the burden of proving by a preponderance of evidence that subject matter jurisdiction exists. *Makarova*, 201 F.3d at 113.

When a motion to dismiss challenges the court's jurisdiction, the district court may look beyond the plaintiff's allegations and consider evidence outside the complaint. *Salem v. Paroli*, 260 B.R. 246, 253 (S.D.N.Y. 2001), *aff'd*, 79 F. App'x 455 (2d Cir. 2003); *see also Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) ("if a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute"). Subject matter jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the [plaintiff]." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "[T]he court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

### B. Analysis of Fed. R. Civ. P. 12(b)(6) Motions and the Permissibility of Judicial Notice

Under Fed. R. of Civ. Proc. 12(b)(6), "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010). The Second Circuit has explained that on a motion to dismiss the court applies a plausibility standard guided by two principles. *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 677 (2009)). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.*

"In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.'" *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993)). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted).

Additionally, when reviewing a complaint submitted by a *pro se* plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted),

and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

The Court may take judicial notice of "any document that is not attached or incorporated by reference 'where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.'" *Kistler v. Stanley Black & Decker, Inc.*, No. 22-CV-966, 2024 WL 3292543, at *5 (D. Conn. July 3, 2024) (quoting *Chambers*, 282 F.3d at 153). To be integral to the complaint, "the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Id.* (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)).

## II.    CONSIDERATION OF DHR'S DOCUMENTS IS APPROPRIATE ON A MOTION TO DISMISS

State Defendants submit with their motion a select number of documents from DHR's administrative record that relate to the initiation and investigation of Plaintiff's complaints. These include the correspondence from HUD, the DHR Complaint, and the DHR Order. *See generally* John Decl. "Courts in this District have routinely taken judicial notice of state administrative records." *Sahni v. Staff Attorneys Ass'n*, No. 14-cv-9873, 2016 WL 1241524, at *5 (S.D.N.Y. Mar. 23, 2016), *recons. in part on other grounds*, 2016 WL 3766214 (S.D.N.Y. May 13, 2016) (taking judicial notice of NLRB administrative record). *See also Evans v. N.Y. Botanical Garden*, No. 02-cv-3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (The records of the New York State Division of Human Rights constitute the public records of an administrative body, of which this court may take judicial notice without converting the motion into one for summary judgment).

DHR Defendants have also submitted certain email correspondence between Plaintiff and State Defendants that has been incorporated into her administrative file. John Decl., ¶¶ 9-10, Exs. 5-6. It is appropriate for this Court to consider those materials in consideration of State Defendants'

motion because they are incorporated by reference or were otherwise relied upon by Plaintiff in the preparation of the Amended Complaint. Plaintiff discusses in detail emails exchanged and calls made to DHR as part of her allegations. *See e.g.*, AC ¶¶ 215-216, 218, 220, 222-231. Further, Plaintiff clearly had notice of them because she drafted several of the documents in question. *See Collins v. City of New York*, 156 F. Supp. 3d 448, 454 n.4 (S.D.N.Y. 2016) (noting that plaintiff had notice of a document because she wrote it). Thus, it is appropriate for this Court to take judicial notice of these records without conversion of this motion into one for summary judgment.

## III.    SOVEREIGN IMMUNITY APPLIES TO THE OFFICIAL CAPACITY CLAIMS

Defendants' sovereign immunity argument is made pursuant to Fed. R Civ. Proc. 12(b)(1). *See Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 479 (2d Cir. 2019) (reviewing Eleventh Amendment sovereign immunity argument for lack of subject matter jurisdiction). In the Amended Complaint, Plaintiff continues to raise Section 1983 claims against the State for its "municipal liability" and against Individual Defendants in their "official capacity." AC ¶¶ 310-316. She seeks both compensatory and punitive damages as relief.[4] *Id.* ¶¶ 327-330.

In an official capacity suit, "the real party in interest . . . is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Eleventh Amendment prohibits federal court jurisdiction over states, state agencies, and state officials in their official capacities unless the state has waived it or unless Congress has expressly abrogated the state's sovereign immunity in exercising its power under section five of the Fourteenth Amendment. *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009).

---

[4]      Claims for monetary damages against the State, *see* AC ¶ 327, can only be brought in the New York Court of Claims. *Balogun v. New York State Div. of Hum. Rts.*, No. 20 CIV. 10484 (LGS), 2022 WL 4292704, at *8 (S.D.N.Y. Sept. 16, 2022), *aff'd*, No. 22-2756, 2023 WL 8446743 (2d Cir. Dec. 6, 2023).

Congress has not abrogated the states' sovereign immunity with respect to most of the claims Plaintiff has brought. Plaintiff's claims that DHR Defendants denied her equal protection with the issuance of the DHR Order is brought under 42 U.S.C. § 1983. Congress did not waive the states' Eleventh Amendment immunity from suit when it enacted section 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States"). "It is well-established that New York State has not consented to § 1983 suits in federal court and that § 1983 was not intended to override a state sovereign immunity." *Mamot v. Board of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010).

Similarly, her Section 1981 claims, AC ¶¶ 312, 316, are precluded by Eleventh Amendment. *See Wang v. Office of Professional Med. Cond., N.Y.*, 354 F. App'x 459, 460 (2d Cir. 2009) (affirming dismissal of State agency). Finally, Congress has also not abrogated the Eleventh Amendment immunity of states under Sections 1985 and 1986. *Keitt v. New York City*, 882 F. Supp. 2d 412, 448 (S.D.N.Y. 2011). Thus, all official capacity or "municipal liability" claims against the State and against DHR Defendants should be dismissed.

## IV. DISMISSAL IS WARRANTED FOR PLAINTIFF'S SECTION 1981 CLAIM

The Amended Complaint also brings claims against DHR Defendants in their individual capacities pursuant to Section 1981. *See* AC ¶¶ 312, 316. Plaintiff merely speculates that DHR Defendants have a bias against white people. *Supra* at 8-9. The DHR Complaint, however, does not mention her race, nor does she allege that she told any DHR Defendants of her race. *Supra* at 5. Despite that absence, the Amended Complaint alleges that DHR Defendants believed Plaintiff had "white privilege" (¶ 175), that DHR was "discriminating against her based on her Caucasian race" (¶ 274), and DHR Defendants believe that the "minority status" of Plaintiff's neighbors "outweighed Plaintiff's disability needs." (¶ 275). *Supra* at 8-9. Even if these allegations were

considered viable and not mere speculation, Plaintiff does not allege that any contract exists between her and the State Defendants, which is required under Section 1981. *See e.g., Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006) ("Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship."). Therefore, Plaintiff's Section 1981 claims should be dismissed.

## V.    DISMISSAL IS WARRANTED FOR PLAINTIFF'S SECTION 1983 CLAIM

DHR Defendants' motion to dismiss based on Plaintiff's failure to state a claim under Section 1983 in their "individual capacity," *see* AC ¶¶ 312-313, is made under Fed. R. Civ. P. 12(b)(6). Plaintiff claims that DHR Defendants denied her "equal protection under the law with regard to her rights" under the ADA and the FHA and further that DHR Defendants "show[ed] negligence to prevent abuse and harm due to lack or protection by these laws and 42 U.S.C. Chapter 126." *Id.* ¶ 312.

To the extent that Plaintiff claims entitlement to relief, she cannot use either the ADA or the FHA as a source of rights as against DHR Defendants. The FHA prohibits discrimination by direct providers of housing, such as landlords and real estate companies as well as other entities, such as municipalities, banks or other lending institutions and homeowners' insurance companies whose discriminatory practices make housing unavailable to persons on the basis of race or color, religion, sex, national origin, familial status, or disability. 42 U.S.C. § 3601. Neither DHR as an agency nor DHR Defendants are alleged to provide housing. As for the ADA, Plaintiff withdrew that claim when she filed her Amended Complaint. *Compare* ECF No. 1 (paragraphs) *with* AC ¶¶ 310-325.

Dismissal remains appropriate overall, as it is "well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a

right, privilege or immunity secured by the Constitution or laws of the United States." *Eagleston v. Guido*, 41 F.3d 865, 875-876 (2d Cir. 1994). "[C]onclusory, vague, or general allegations" of a constitutional violation will not suffice. *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977).

The Amended Complaint provides additional allegations about DHR Defendants' investigation of the DHR Complaint, *supra* at 5-9, but does not allege a viable claim. Plaintiff makes a series of conclusory allegations about DHR's processing of her complaint, including allegations about the duration of the investigation and the motives of the agency and its employees. AC ¶¶ 38-92, 154-177, 209-282. For example, she recounts perceived slights during conversations with DHR Defendants, claimed that Defendants John and Tyndall were "unprofessional," and that DHR overall was giving bad "vibes" to Plaintiff. *Id.* ¶¶ 79, 158-62. She further alleges that the "welfare check" initiated by Defendants Tyndall and John was part of an effort to "viciously and intentionally" inflict another "traumatizing event" on Plaintiff, *Id.* ¶¶ 164, 178-208, even though it was made after Plaintiff's references to suicide to Defendant Tyndall. *Supra* at 4. Plaintiff fails to identify a constitutional violation within this summary, which warrants dismissal.

Instead, Plaintiff continues to allege that "there exists a discriminatory bias at DHR which prioritizes cases that are based on race, gender, sexual orientation… to the detriment of those who are disabled… constituting a net result equivalent to discrimination against those with disabilities…." AC ¶ 78. *See also id.* ¶ 82 (alleging an anti-Caucasian pedagogy); ¶¶ 277-279 (alleging anti-Caucasian discriminatory practices). She also alleges that Defendant John was once employed by CCHR, and that by the fact of her former employment and Plaintiff's lawsuit against CCHR, Defendant John was incapable of treating Plaintiff fairly and had retaliated against her. *Id.* ¶¶ 40-44. At best, these allegations are speculative and conclusory, which are insufficient to allege a Section 1983 claim.

These further allegations about disability, including through oblique and conclusory references to the ADA and the Rehabilitation Act, *see id.* ¶¶ 45, 47-48, 62-63, 70, 230-234, are also insufficient to show discrimination or violation of a constitutional right. Plaintiff appears in part to conflate her landlord's alleged failure to accommodate her disability (a "traumatic brain injury") by prohibiting smoking in adjoining units with DHR's investigation of those allegations. *Id.* ¶¶ 50, 74, 252-265. To the extent Plaintiff alleges that she was not given sufficient time to provide evidence to DHR after invoking her disability, the Amended Complaint reflects that extensions were given. *Id.* ¶¶ 222-229. *See also* John Decl., Ex. 5 at 31-36. Ultimately, Plaintiff is dissatisfied with DHR's final determination, *id.* ¶¶ 64, 243, 252, but she has not identified either a violation of a constitutional right or a failure to provide her with due process, elements that are necessary for a viable Section 1983 claim. Moreover, the record is clear that Plaintiff never appealed the DHR Order. *Supra* at 7-8. Dismissal is therefore appropriate.

## VI.  DISMISSAL IS WARRANTED FOR PLAINTIFF'S SECTION 1985 AND SECTION 1986 CONSPIRACY CLAIMS

### A.  Plaintiff Has Failed to Allege a Conspiracy

Dismissal is also warranted for Plaintiff's Section 1985(2) and (3) conspiracy claims. AC ¶¶ 310-312. To maintain an action under Section 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Romer v. Morgenthau,* 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (citation omitted).

Section 1985(2) "renders actionable (1) a conspiracy[,] (2) for the purpose of impeding, hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any State or Territory, (4) with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of

persons, to the equal protection of the laws." *Rodriguez v. City of N.Y.*, No. 05-CV-10682, 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008). "Title 42 U.S.C. § 1985(3) prohibits, in pertinent part, conspiracies undertaken 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws.'" *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 290 (2d Cir. 1992) (quoting 42 U.S.C. § 1985(3)). "The elements of a claim under § 1985(3) are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, ...; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (alterations in original) (internal quotation marks omitted); *see also Turkmen v. Hasty*, 789 F.3d 218, 262 (2d Cir. 2015) (same), *judgment rev'd in part, vacated in part on other grounds sub nom. Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017).

Both claims "require a showing of class-based invidiously discriminatory animus" on the part of the conspiring parties, *Hickey v. City of N.Y.*, No. 01-CV-6506, 2004 WL 2724079, at *22 (S.D.N.Y. Nov. 29, 2004), *aff'd*, 173 F. App'x 893 (2d Cir. 2006), as well as "some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb*, 340 F.3d at 110 (internal quotation marks omitted). *See also Thomas v. DeCastro*, No. 14-CV-6409 (KMK), 2018 WL 1322207, at *12 (S.D.N.Y. Mar. 13, 2018) (same).

Plaintiff has not alleged, except in the most conclusory fashion, *see* AC ¶ 238, that any such meeting of the minds occurred among any DHR Defendants. Nowhere does she allege any "details of time and place and the alleged effects of the conspiracy," which is required to allege a viable claim. *Romer*, 119 F. Supp. 2d at 363. All her allegations of racial motives are pure

speculation borne out of a frustration with the outcome of the DHR Order, and the allegations about a conspiracy to discriminate on the basis of disability are nullified by DHR's accommodation. *Supra* at 5-9. Further, Plaintiff has failed to allege any conspiracy between DHR Defendants and any actor outside of DHR. Thus, her conspiracy claims are barred by the intracorporate conspiracy doctrine. *See Murphy v. City of Stamford*, 634 F. App'x 804, 805 (2d Cir. 2015) (affirming dismissal where defendants were all employees or agents of a city entity, the alleged conspiratorial activities pertained to and were motivated by the defendants' respective public duties, and the alleged discriminatory conduct pertains to a single act). Given these deficiencies, Plaintiff's conspiracy claims must therefore fail. *See Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).[5] *See also Mira v. Kingston*, 715 F. App'x 28, 30 (2d Cir. 2017) (same); *Benzinger v. NYSARC, Inc. New York City Chapter*, 385 F. Supp. 3d 224, 236-37 (S.D.N.Y. 2019) (same).

### B.  The Section 1986 Claims Also Fail.

In addition to her Section 1985 claims, Plaintiff also brings a claim under Section 1986, claiming that the DHR Defendants had "misrepresent[ed] the law, under color of law, in concert, and by which mode, did conspire to deny, and did deny, Plaintiff equal protection under the law with regard to her rights" under the ADA and FHA." AC ¶ 312. Dismissal is appropriate, as Section 1986 claims are predicated on a valid Section 1985 claims, which Plaintiff has not established. *See Brown*, 221 F.3d at 341 (outlining the standard).

---

[5]    Plaintiff has alleged that DHR followed CCHR's finding but does not allege a conspiracy with employees of that agency. AC ¶¶ 40-44.

## VII.    THE SECTION 504 CLAIM ALSO FAILS

Dismissal is warranted for Plaintiff's Section 504 claims. Plaintiff brought this claim against DHR Defendants in both their "official and individual capacities… for denying Plaintiff full protection of her disability right under the laws and access to the agency's enforcement powers, while DHR was in receipt of federal funding. AC ¶ 317. However, individuals in their personal capacities are not proper defendants on claims brought under the Rehabilitation Act. *Keitt v. New York City*, 882 F. Supp. 2d at 426 (citing *Harris*, 572 F.3d at 72).

As for the Section 504 claim against the State and the DHR Defendants in their official capacities, Plaintiff has failed to allege a valid claim.[6] Plaintiff's core complaint against State Defendants is that they did not find in her favor in the DHR Order and thereby agree with her contention that her landlord had engaged in unlawful housing discrimination based on her asserted disabilities. *Supra* at 7-8. The record reflects that she did not exercise her rights to appeal the DHR Order. *Supra* at 7-8. She concedes in the Amended Complaint that when she sought an accommodation to file a rebuttal based on her disability, DHR Defendants provided her with one. *Supra* at 6. Finally, the mere act of calling for welfare check does not reasonably allege a disability claim. *Supra* at 4. As such, the Section 504 claim against State Defendants in their official capacity should be dismissed.

## VIII.    THERE IS NO BASIS FOR THIS COURT TO EXERCISE SUPPLEMENTAL JURISDICTION

Finally, dismissal is warranted for Plaintiff's common law claims of intentional and negligent infliction of emotional distress, retaliation, negligent supervision, and "lack of

---

[6]    State Defendants acknowledge that Eleventh Amendment immunity does not apply to this claim as DHR accepts federal funds, including for the investigation of housing discrimination cases. *See Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 414 (S.D.N.Y.2006) ("Because the Rehabilitation Act was enacted pursuant to the Spending Clause of Article I, Congress can require states to waive their sovereign immunity as a condition of accepting federal funds.")

appropriate training." AC ¶¶ 315, 324. "When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 597–98 (2018) (citing 28 U.S.C. § 1367(c)). As this case is in the pleading stage, and only the state-law claims would be left of the motion is granted, dismissal without prejudice for all of these claims is appropriate under comity principles. *Corley v. Vance*, 365 F. Supp. 3d 407, 462-63 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) (reviewing standard and dismissing common law claims). *See also Doe v. Sacks*, 714 F. Supp. 3d 402, 416 (S.D.N.Y. 2024) (declining to exercise jurisdiction where the federal case was in its early stages).

## CONCLUSION

For the foregoing reasons, State Defendants' motion to dismiss should be granted. The Court should award such other and further relief as it deems proper.

Dated:  New York, New York
    April 7, 2025

LETITIA JAMES
Attorney General
State of New York

  /s/Elizabeth A. Figueira

ELIZABETH A. FIGUEIRA
Assistant Attorney General
28 Liberty Street
New York, New York 10005
Tel: (212) 416-8528
elizabeth.figueira@ag.ny.gov
*Attorney for State Defendants*

**CERTIFICATION PURSUANT TO CIVIL RULE 7.1(c) OF THE JOINT
LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE
SOUTHERN AND EASTERN DISTRICTS OF NEW YORK**

The undersigned certifies that, using the Microsoft Word feature called "Word Count" and excluding the cover page, captions and signature block, State Defendants' Memorandum of Law in Support of Their Motion To Dismiss Plaintiff's Amended Complaint, dated April 7, 2025, contains **6,994** words, under the **8,750** word limit.

Dated:  New York, New York
   April 7, 2025

LETITIA JAMES
Attorney General
State of New York

  /s/Elizabeth A. Figueira

ELIZABETH A. FIGUEIRA
Assistant Attorney General
28 Liberty Street
New York, New York 10005
Tel: (212) 416-8528
elizabeth.figueira@ag.ny.gov
*Attorney for State Defendants*

22