24 Civ. 6017 (LGS) (JW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY MACNEAL,

                                           Plaintiff,

-against-

THE STATE OF NEW YORK, THE CITY OF NEW YORK, CHELSEA JOHN, GINA MARTINEZ, ELENA PERLONGO, JOHN HERRION, CANDACE TYNDALL, ELIZABETH ORTIZ, JOHN CORDE, CHANDLER CASTRO, CHRISTIAN ORELLANA, JOSE QUINTUNA-GUAMAN, FRANK TARSILLO, and RYAN STACK[1]

                                           Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
   *Attorney for Defendants City, Castro, Corde,*
   *Orellana, Quintuna-Guaman and Stack*
   *100 Church Street*
   *New York, N.Y. 10007*

   *Of Counsel: John McLaughlin*
   *Tel: (212) 356-2670*
   *Matter No.: 2024-075841*

---

[1] John Corde appears on the docket as "John Cordero," and Jose Quintuna-Guaman appears on the docket as "Jose Quintuana-Guaman." This filing uses the correct spellings as originally provided in the City's *Valentin* response. (ECF No. 17.)

## PRELIMINARY STATEMENT

This Reply Memorandum addresses three fundamental deficiencies that compel dismissal of Plaintiff's Amended Complaint: (1) the submission of fabricated legal authorities that undermines the integrity of these proceedings and eviscerates Plaintiff's core legal theories; (2) the failure to distinguish this case from the Court's recent decision rejecting materially identical claims brought by this same Plaintiff; and (3) the absence of any cognizable legal theory supporting municipal liability under established Second Circuit precedent.

Plaintiff's opposition reveals a troubling pattern of misrepresentation, from citing non-existent case law to materially mischaracterizing legitimate authorities. These are not mere technical deficiencies—they constitute the foundation of Plaintiff's *Monell* theory and, once exposed, leave her claims devoid of legal support. The Court need not venture beyond established precedent, including its own recent analysis in *MacNeal v. City of New York*, 2025 WL 640666 (S.D.N.Y. Feb. 26, 2025), to conclude that Plaintiff has failed to state any viable claim against the City Defendants.

For the reasons set forth herein and in Defendants' opening brief, the Amended Complaint should be dismissed in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFF'S OPPOSITION RELIES ON NONEXISTENT LEGAL AUTHORITIES

Plaintiff's opposition brief contains several purported authorities that, on information and belief, do not appear in any legal database. These cases do not appear to exist, and, as detailed in the arguments at Point II, *infra*, these propositions do not accurately reflect the relevant legal standards. These cases are as follows:

1. *Davis v. City of New York*, 2014 WL 1011070 (S.D.N.Y. Mar. 14, 2014). Plaintiff claims this case holds that "allegations of multiple instances of police misconduct against the same individual raise[s] significant questions about the existence of a custom or policy within the department that leads to constitutional violations." (Pl. Opp. at 11.)

2. *Baker v. City of New York*, 2015 WL 4393000 (E.D.N.Y. July 15, 2015). Plaintiff attributes to this non-existent case the proposition that "[t]he repeated instances of false arrest and excessive force against the same plaintiff suggest a pattern of behavior that may indicate a failure in training or policy, supporting the Monell claim." (Pl. Opp. at 11.)

3. *In re J.B.*, 2013 IL App (1st) 120202 - Plaintiff claims this case stated: "The standard for involuntary commitment is not less than the standard for a criminal arrest." (Pl. Opp. at 16.)

City Defendants have conducted comprehensive searches in both Lexis and Westlaw using the provided reporter numbers and quoted language.

"Generative artificial intelligence tools can fabricate or 'hallucinate' legal precedent. By now, that fact has been broadly communicated to the public and the bar." *Romero v. Goldman Sachs Bank U.S.A.*, No. 25 Civ. 2857 (GHW), 2025 U.S. Dist. LEXIS 132891, at *2 (S.D.N.Y. June 25, 2025). While Plaintiff proceeds *pro se* and is accorded special solicitude, this does not excuse the presentation of false legal authorities. *See Romero*, 2025 U.S. Dist. LEXIS 132891, at *2–3 (quoting Fed. R. Civ. P. 11(b)); *Anonymous v. N.Y.C. Dep't of Educ.*, No. 24 Civ. 4232 (JLR), 2024 U.S. Dist. LEXIS 127114, at *19-21 (S.D.N.Y. July 18, 2024); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023); *see also Kotler v. Jubert*, 986 F.3d 147, 156 (2d Cir. 2021) ("[S]olicitude for *pro se* litigants does not require [a court] to excuse failure to comply with understandable procedural rules[.]"); *Losacco v. City of Middletown*, 71

2

F.3d 88, 92 (2d Cir. 1995) (noting that it is "especially true in civil litigation[]" that *pro se* litigants must learn and comply with procedural rules). This fabrication of legal authorities—whether intentional or through extreme carelessness—violates fundamental obligations to the Court.

## POINT II

### PLAINTIFF FAILS TO STATE A § 1983 CLAIM

**A.  Plaintiff's *Monell* Argument Depends upon Fictional Authorities.**

The fictional authorities upon which Plaintiff relies constitute the cornerstone of her *Monell* theory. Without these false precedents, her municipal liability claim collapses entirely. Moreover, established jurisprudence—including this Court's recent analysis of materially identical claims brought by this same Plaintiff—compels dismissal.

**(1) No Formal Policy Violates the Constitution**

Plaintiff characterizes the City as maintaining "a custom or policy of wrongly accepting hearsay reports that a person is in need of psychological evaluation." (Pl. Opp. at 14.) This formulation reveals a fundamental misapprehension of both legal standards and operative facts.

Mental Hygiene Law § 9.41 expressly authorizes police officers to "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." N.Y. Mental Hyg. Law § 9.41(a). Any municipal policy implementing this statutory mandate is, by definition, constitutional. See *Greene v. City of New York*, 725 F. Supp. 3d 400, 429 (S.D.N.Y. 2024) ("As the challenged Policies merely implement a constitutional state law, they cannot form the basis of Plaintiffs' *Monell* claim.").

3

> This precise issue was already addressed by this Court in Plaintiff's related case:
>
>> '[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.' . . . Plaintiff's email threatening suicide provided CCHR and the officers a reasonable basis for believing that Plaintiff was a danger to herself.

*MacNeal v. City of New York*, 2025 WL 640666, at *21–22 (S.D.N.Y. Feb. 26, 2025) (quoting *Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022)).

Plaintiff identifies no additional fact in this case that would warrant distinction here.

### (2) No *De Facto* Policy or Custom

Plaintiff's reliance on the fictitious *Davis* and *Baker* decisions to establish a "pattern of behavior" theory leaves this argument devoid of legal support. Actual precedent unequivocally rejects municipal liability based upon isolated incidents affecting a single individual.

To establish a *de facto* policy, plaintiff must demonstrate "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." *Buckner v. N.Y. Admin. for Childs. Servs.*, 2024 WL 3656506, at *6 n.5 (S.D.N.Y. July 31, 2024). Plaintiff's personal encounters over nine years—each arising from distinct circumstances and involving different agencies—fall dramatically short of this standard. *Cf. Pluma v. City of New York*, 2015 U.S. Dist. LEXIS 48134, at *34–35 (S.D.N.Y. Mar. 31, 2015) (finding "dissimilar incidents occurring over the course of more than a decade" insufficient to establish municipal notice).

### (3) No Deliberate Indifference

Plaintiff's fabricated *In re J.B.* citation misrepresents the legal standards governing mental health detentions. Actual jurisprudence recognizes distinct constitutional frameworks for mental health interventions under the state's *parens patriae* authority. *See Addington v. Texas*, 441 U.S. 418, 426 (1979); *In re KL.*, 1 N.Y.3d 362, 370, 806 N.E.2d 480, 774 N.Y.S.2d 472 (N.Y. 2004).

To establish deliberate indifference through failure to train, Plaintiff must demonstrate "actual or constructive notice, generally from a pattern of similar constitutional violations by untrained employees." *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019); *see also MacNeal*, 2025 WL 640666, at *22.

### B.  Plaintiff's False Imprisonment Theory Still Fails.

Plaintiff fails to overcome the dispositive arguments made in the City Defendants' opening brief, Point I.B. Plaintiff concedes that NYPD officers were responding to a suicide-threat report transmitted by the New York State Division of Human Rights (DHR) and offers no fact suggesting the officers had reason to doubt its credibility.[2] Second Circuit precedent holds that a probability or substantial chance of dangerous behavior satisfies probable cause for a mental-health seizure, and that a citizen—or agency—report of a suicide threat is ordinarily enough. *Guan v. City of N.Y.*, 37 F.4th 797, 807 (2d Cir. 2022); *Barkai v. Mendez*, 2024 WL 811561, at *50 (S.D.N.Y.).

---

[2] Plaintiff accuses the City Defendants of "shamefully" misrepresenting her statements, but the opening brief merely paraphrased her own pleading, in which she alleges an "unlawful conspiracy to deny Plaintiff her disability rights." (Am. Compl. at ¶ 70.) This alleged conspiracy appears to constitute "the extensive backstory leading up to the inaccurate and inappropriate 'suicide' call[]" that Plaintiff related to officers during the incident. (*Id.* at ¶ 191.)

In her opposition, Plaintiff claims "there are a number of occasions where welfare calls did not lead to a privileged arrest." (Pl. Opp. at 22–23.) However, Plaintiff relies exclusively on *Livingston v. Kehagias*, a readily distinguishable case from the Fourth Circuit. 803 F. App'x 673 (4th Cir. 2020). In *Livingston*, the 911 dispatch was triggered by the detainee himself, and indeed the Court declined to reach the issue of probable cause, finding that the officers were entitled to qualified immunity. *Id.* at 691. That difference places this case closer to *Cloaninger v. McDevitt*, 555 F.3d 324 (4th Cir. 2009), on which *Livingston* relied. In *Cloaninger* the Fourth Circuit held that similar third-party information—together with the subject's non-cooperation—gave officers probable cause to perform a mental-health seizure and, at a minimum, entitled them to qualified immunity. *Id.*

These two Fourth Circuit cases thus support, rather than undermine, the City Defendants' position: credible reports of a suicide threat provide probable cause, and even in murkier circumstances, qualified immunity protects responding officers where the law is "distinct[ly] lack[ing] . . . clarity." *Livingston*, 803 F. App'x, at 690. Plaintiff's opposition never grapples with that point, nor does it identify any authority in this Circuit holding otherwise.

C.     **Plaintiff's Unlawful Search Theory Still Fails.**

Plaintiff contends that officers were "informed in advance that NO mental health crisis existed and Plaintiff was NOT home." (Pl. Opp. at 20.) This assertion improperly conflates what officers knew at the time of entry with information Plaintiff claims to have conveyed during a subsequent telephone conversation. The Amended Complaint itself establishes that officers had already been attempting to locate Plaintiff, whose phone was turned off, before any contact occurred. (Am. Compl. ¶¶ 178–83). Plaintiff now seeks to rewrite this chronology by suggesting her telephonic statements somehow retroactively negated the emergency circumstances that had already prompted the officers' response.

6

The legal standard for emergency aid entries examines "the facts, as they appeared at the moment of entry," not post hoc assurances. *Chamberlain v. City of White Plains*, 960 F.3d 100, 106 (2d Cir. 2020). Officers confronted a suicide threat reported by a state agency and hours of unsuccessful attempts to physically verify Plaintiff's safety. Even accepting Plaintiff's allegation that she subsequently denied suicidal intent, officers need not credit such denials when responding to credible reports of self-harm.

Plaintiff's argument essentially demands that officers abandon their emergency response based solely on unverifiable telephonic statements from an individual who had threatened suicide. The law imposes no such requirement. The inability to physically locate an individual who has threatened self-harm heightens rather than diminishes the emergency nature of the situation.

### D. Plaintiff's Retaliation Theory Lacks Any Plausible Foundation.

Plaintiff's retaliation theory strains credulity beyond the breaking point. She contends that NYPD and FDNY EMS personnel acted as "willing participants in acts of retaliation instructed by others," specifically suggesting these first responders knowingly facilitated retaliation by other agencies. (Pl. Opp. at 21.) This theory requires the Court to accept that emergency responders—who had never previously encountered Plaintiff—somehow divined and participated in an elaborate inter-agency conspiracy to retaliate against her for pursuing disability rights. For the reasons stated in Defendants' opening brief at Point I.D, the retaliation claim must be dismissed.

## POINT III

### PLAINTIFF'S ADA CLAIMS REMAIN DEFICIENT

Plaintiff's opposition regarding her ADA claims presents no novel legal theories or factual allegations beyond those already addressed in Defendants' opening brief. Her argument continues to conflate distinct legal frameworks and misapprehends the fundamental nature of ADA protections.

Plaintiff persists in characterizing law enforcement's response to mental health emergencies as a denial of "access to the law and protection through enforcement." (Pl. Opp. at 23). This reconceptualization cannot salvage claims that fail to identify any service, program, or activity from which she was excluded by reason of disability. As demonstrated in Defendants' opening brief, Title II does not transform every interaction between disabled individuals and law enforcement into an ADA violation.

The Second Circuit's decision in *Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021), remains dispositive: challenges to "the substance of the services provided" do not constitute ADA violations. Plaintiff received precisely the same emergency response any individual would receive following a credible suicide report. That she disagrees with the necessity of such response does not transmute a lawful mental health intervention into disability discrimination.

## POINT IV

### PLAINTIFF DOES NOT PROPERLY STATE CLAIMS UNDER STATE LAW

A. **Plaintiff Still Fails to Identify a Defamatory Statement, as Required**

Plaintiff's opposition conspicuously fails to address the fundamental deficiency identified in Defendants' opening brief: the absence of any false statement of fact attributable to

8

the City Defendants. Under New York law, a defamation claim requires, inter alia, "a false statement that tends to expose a person to public contempt." *Long Island Thoracic Surgery, P.C. v. Bldg. Serv. 32BJ Health Fund*, 215 A.D.3d 942, 188 N.Y.S.3d 570, 572 (2d Dep't 2023) (internal quotation marks omitted). The only statement Plaintiff cites to is by DHR, a State agency, and is not attributable to the City Defendants.

B.   **Plaintiff Still Fails to State Claims for Negligent or Intentional Infliction of Emotional Distress**

Plaintiff's opposition similarly fails to remedy the fatal defects in her emotional distress claims identified in Defendants' opening brief at Point III.C. With respect to intentional infliction of emotional distress, Plaintiff offers no legal authority or factual allegations demonstrating that a lawful mental health response to a suicide report constitutes "extreme and outrageous conduct" under New York's stringent standard. *Cf. Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 49 N.E.3d 1171, 1178 (N.Y. 2016).

Regarding negligent infliction of emotional distress, Plaintiff's opposition fails entirely to address the dispositive contradiction identified in Defendants' opening brief: her allegations describe exclusively intentional conduct, which cannot support a negligence-based claim as a matter of law. *Fernandez v. Fernandez*, 216 A.D.3d 743, 189 N.Y.S.3d 538, 541 (2d Dep't 2023). This fundamental pleading defect remains uncured.

For the reasons stated above and as comprehensively detailed in Defendants' opening brief at Point III.C, these state law claims must be dismissed.

## **CONCLUSION**

For the reasons set forth herein, defendant City of New York respectfully requests that the Court grant its motion to dismiss on all claims, together with such other and further relief as the Court deems just and proper.[3]

Dated:       New York, NY
             August 15, 2025

                              MURIEL GOODE-TRUFANT
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants City of New York,*
                                  *Castro, Corde, Orellana, Quintuna-Guaman,*
                                  *and Stack*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2670

                          By: */s/ John McLaughlin*
                                John McLaughlin
                                *Assistant Corporation Counsel*
                                Special Federal Litigation

---

[3] In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 2398. I have relied on the word count function of Microsoft Word to prepare this certification.

Cc:    **<u>VIA ECF AND E-MAIL</u>**
      Kelly MacNeal
      507 W 28th Street
      Apt. 26D
      New York, NY 10001
      Email: Macnificent2016@gmail.com
      *Plaintiff Pro Se*

      Elizabeth Anne Figueira
      New York State Office of the Attorney General (28 Liberty)
      28 Liberty Street, 15th Floor
      New York, NY 10005
      (212) 416-8528
      Fax: (212) 416-6009
      Email: elizabeth.figueira@ag.ny.gov
      *Attorney for Codefendants*