24 Civ. 6017 (LGS) (JW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY MACNEAL,

                                                    Plaintiff,

-against-

STATE OF NEW YORK, et al.,

                                                    Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT TARSILLO'S MOTION TO DISMISS THE AMENDED COMPLAINT**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
    *Attorney for Defendants City, Castro, Corde, Orellana, Quintuna-Guaman, Stack, and Tarsillo*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: John McLaughlin*
*Tel:  (212) 356-2670*
*Matter No.:  2024-075841*

## ARGUMENT

### POINT I

### PLAINTIFF IS NOT ENTITLED TO THE MANDATORY EXTENSION PROVISION OF 4(m) BECAUSE SHE CANNOT ESTABLISH "GOOD CAUSE" FOR UNTIMELY SERVICE

Rule 4(m) provides that if a defendant is not served within 90 days, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). The plaintiff bears the burden to show "good cause" for untimely service. *Zapata v. City of N.Y.*, 502 F.3d 192, 196 (2d Cir. 2007) (cited in Def. Mem. at 3). Here, there is no dispute that the Rule 4(m) deadline to serve the Amended Complaint was March 4, 2025, and that service on Defendant EMT Frank Tarsillo was not effected until September 19, 2025—more than six months after the deadline expired. (ECF Nos. 38, 116; Def. Mem. at 2.)

Those facts squarely trigger the Second Circuit's controlling rule in *Meilleur v. Strong*, 682 F.3d 56 (2d Cir. 2012), which Defendants relied upon in the opening brief. In Meilleur, the Second Circuit held:

> If a plaintiff proceeding IFP [*in forma pauperis*] chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) or court-ordered deadline, she must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so.

*Id*. at 63.

Plaintiff's opposition does not meaningfully confront that rule. Instead, Plaintiff argues that her "well-documented" disabilities (TBI, migraines, vertigo) and alleged "clerical errors" by the Pro Se desk made it "effectively impossible" to monitor every service obligation, and that the "failure to file a specific extension request" was "not willful," but "unavoidable."

(Pl. Opp. at 1–2, 4.) The docket refutes that characterization. Plaintiff received an explicit judicial warning—citing *Meilleur*—that if service was not completed within the Rule 4(m) period, she "should request an extension of time for service." (ECF No. 38.) Yet during the more than six-month period after the service deadline elapsed, Plaintiff filed multiple submissions, including motions seeking extensions on other matters (ECF Nos. 30, 31, 34, 80), while never once addressing Tarsillo's service status or requesting an extension of time to serve him. (See ECF No. 116.) Plaintiff offers no explanation for that selective omission, and her demonstrated ability to seek extensions when it served her litigation needs confirms that the failure here is not "unavoidable," but inexcusable neglect. Whatever Plaintiff's challenges, the record establishes that she was told precisely what to do and did not do it.

Plaintiff principally invokes the cases *Romandette v. Weetabix Co.*, 807 F.2d 309 (2d Cir. 1986) and *Murray v. Pataki*, 378 F. App'x 50 (2d Cir. 2010), to argue that good cause exists for *IFP* litigants who rely on the Marshals and face obstacles beyond their control. (Pl. Opp. at 5.) Those decisions are readily distinguishable and, critically, were decided before *Meilleur*'s set the present controlling standard.

In *Romandette*, the Second Circuit emphasized the plaintiff's incarceration and the fact that he had "done everything in his power to comply with Rule 4," in circumstances where "the defendant had actual notice of the suit." 807 F.2d at 312. The case also addressed a Rule 41(b) failure-to-prosecute dismissal and found the period of inaction "readily explainable" by the plaintiff's transfer in a criminal matter. *Id*. at 312. Plaintiff here is not an incarcerated litigant deprived of access to communication and case management, and the issue is not a brief, explainable pause; the issue is that Plaintiff let the Rule 4(m) deadline pass and did not follow the Court's express instruction to request additional time. (ECF No. 38; Def. Mem. at 2.)

2

*Romandette* does not hold that *IFP* status alone eliminates the plaintiff's obligation to seek an extension when service is not timely; and, after *Meilleur*, the Second Circuit has made explicit that this obligation exists and is dispositive. 682 F.3d at 63.

*Murray* is even further afield. *Murray* vacated a Rule 4(m) dismissal as to one defendant because district courts "have a responsibility to assist *pro se* plaintiffs in their efforts to serve process on defendants," including by allowing limited discovery to identify a defendant for service. 378 F. App'x at 51 (citing *Valentin v. Dinkins*, 121 F.3d 72, 75–76 (2d Cir. 1997)). The problem there was identification/locating a defendant—not a failure to request an extension after the plaintiff was explicitly warned to do so. Here, EMT Tarsillo was identified by the City pursuant to *Valentin* promptly; summons issued; and the service package was delivered to the USMS. (ECF Nos. 38, 40.) Plaintiff's problem is the one *Meilleur* squarely addresses: the absence of a timely request for additional time once service was not completed within the time limits established by Rule 4(m). 682 F.3d at 63.

## POINT II

### IN THE ABSENCE OF GOOD CAUSE, PLAINTIFF'S OWN AUTHORITY SUGGESTS THAT THE COURT SHOULD DECLINE TO GRANT A DISCRETIONARY EXTENSION HERE

Plaintiff's fallback is that, even if "strict 'good cause' under Meilleur" is absent, the Court should grant a "discretionary extension" under *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007), largely because limitations have run and she claims Defendant has suffered "no identifiable prejudice beyond routine delay." (Pl. Opp. at 2, 6.) That argument misreads *Zapata*.

*Zapata* holds that courts have discretion to extend time absent good cause, but it also holds that there is *no abuse of discretion* in denying an extension—even where limitations

3

would bar refiling—so long as the district court weighs the impact. 502 F.3d at 197. And indeed, *Zapata* is a case where the Circuit affirmed the district court's decision to deny such an extension. The Second Circuit stated:

> Where, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal with prejudice, we will not find an abuse of discretion . . . so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties.
>
> *Id*. at 197.

*Zapata* squarely rejects Plaintiff's attempt to turn limitations consequences into a trump card. It cautions that, "In the absence of good cause, no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." *Id.* at 198. As already noted, the Court instructed Plaintiff—citing *Meilleur*—to request an extension if service was not completed within 90 days. (ECF No. 38.) Plaintiff did not do so. Service was completed more than six months late. (ECF No. 116; Def. Mem. at 2.) Under *Zapata*, this is the paradigmatic circumstance where a discretionary extension may be denied because the predicament is plaintiff-created. *See* 502 F.3d at 198–99.

Indeed, the specific *Zapata* language that most closely matches the record here underscores why a discretionary extension should be denied: "Zapata made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay." *Id.* at 198–99 (citing *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 508 (2d Cir. 2006)).

Here, too, Plaintiff did not ask for an extension within the service period (or within any reasonable period thereafter), despite a direct judicial warning. (ECF No. 38; Def. Mem. at 2, 5.) Plaintiff's attempt to recast this as "routine delay" and "no prejudice" is also inconsistent with *Zapata*'s understanding of prejudice. *Zapata* explains that the district court

4

there denied an extension "based on the prejudice that [the defendant] would suffer by being forced to defend a time-barred action[,]" and emphasizes that district courts may "weigh the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service." *Id.* at 198. That is exactly the prejudice here: Plaintiff's late service pushed this case past the one-year-and-ninety-day limitations period applicable to state-law claims against municipal employees. (*See* Def. Mem. at 6 (citing N.Y. Gen. Mun. Law § 50-i(1); CPLR § 217-a; *Campbell v. City of N.Y.*, 4 N.Y.3d 200, 202 (2005)).)

Plaintiff cites no authority—even under *Zapata,* much less under the current standard of *Meilleur*—holding that it is an abuse of discretion for the district court to deny a discretionary extension on a record like this one: explicit warning to seek an extension; no extension request; and service completed more than six months late. *Zapata* teaches the opposite: limitations consequences do not compel an extension, particularly where the untimeliness is attributable to the plaintiff's failure to take the required procedural step. 502 F.3d at 197–99.

Finally, Plaintiff invokes general "leniency" principles for pro se litigants (*LeSane v. Halls Sec. Analyst, Inc.,* 239 F.3d 206 (2d Cir. 2001)), a pleading case (*Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994)), and ADA access-to-courts concepts (*Tennessee v. Lane*, 541 U.S. 509 (2004)). (Pl. Opp. at 6–7.) None of these authorities alters the controlling Rule 4(m) analysis.

*LeSane* concerned a Rule 41(b) dismissal for failure to prosecute and observed that "*pro se* plaintiffs should be granted special leniency regarding procedural matters." 239 F.3d at 209. But *LeSane* does not address Rule 4(m), and it predates this Circuit's service-specific rule in *Meilleur*—which the Court expressly cited in its Order of Service here. (ECF No. 38.)

5

Nor does *Davidson* help Plaintiff. It is not a Rule 4(m) decision excusing service failures for disabled litigants; the portion Plaintiff cites addresses pleading standards and, in context, explains that special solicitude may be limited where the *pro se* litigant is demonstrably familiar with litigation. 32 F.3d at 31 (noting that "under other circumstances" sparse pleadings might warrant leniency, but the plaintiff there was "an extremely litigious inmate . . . quite familiar with the legal system and with pleading requirements."). That is not a basis to disregard the explicit requirement—reiterated in *Meilleur* and in the Court's Order—that Plaintiff request an extension when service is not timely. (ECF No. 38; *Meilleur*, 682 F.3d at 63.)

Finally, *Lane* concerned Title II ADA enforcement and access to courthouses; it does not supply a Rule 4(m) standard or authorize dispensing with the service-extension framework established by Rule 4(m) and the Second Circuit's binding decisions in *Meilleur* and *Zapata*. 541 U.S. at 531–32. The Court's Order of Service already incorporated the relevant "procedural flexibility" by explaining exactly how Plaintiff could obtain additional time—by requesting it. (ECF No. 38.) Plaintiff simply did not do so.

**CONCLUSION**

For the reasons set forth herein, and in Defendant's opening brief, Defendant Frank Tarsillo respectfully requests that the Court grant its motion to dismiss all claims against Frank Tarsillo in the Amended Complaint together with such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           January 2, 2026

                                          MURIEL GOODE-TRUFANT
                                          Corporation Counsel of the City of New York
                                          *Attorney for Defendants City, Castro, Corde,*
                                             *Orellana, Quintuna-Guaman, Stack, and*
                                             *Tarsillo*
                                          100 Church Street
                                          New York, New York 10007
                                          (212) 356-2670

                                          By: /s/ *John McLaughlin*
                                             John McLaughlin
                                             *Assistant Corporation Counsel*
                                             Special Federal Litigation

Cc:   **VIA ECF**
      Kelly MacNeal
      507 W 28th Street
      Apt. 26D
      New York, NY 10001
      Email: Macnificent2016@gmail.com
      *Plaintiff Pro Se*

      *All counsel of record.*

7

**CERTIFICATION**

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 1,837. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated:   New York, New York
         January 2, 2026

                                            MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York
*Attorney for Defendants City, Castro, Corde, Orellana, Quintuna-Guaman, Stack, and Tarsillo*
100 Church Street
New York, New York 10007
(212) 356-2670

By: /s/ *John McLaughlin*
    John McLaughlin
    *Assistant Corporation Counsel*
    Special Federal Litigation