UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                              :

KELLY MACNEAL,                     :

                  Plaintiff,    :

                       :         24 Civ. 6017 (LGS)

       -against-          :

                       :        **<u>OPINION & ORDER</u>**

STATE OF NEW YORK et al.,     :

                Defendants.  :

                       :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

This Opinion & Order addresses three motions to dismiss the Amended Complaint (the "Complaint"), which is the operative complaint. The motions were filed by (1) Defendants the State of New York (the "State"), Chelsea John, Gina Martinez, Elena Perlongo, John Herrion, Candace Tyndall and Elizabeth Ortiz (collectively, the "State Defendants") and (2) Defendants the City of New York (the "City"), Chandler Castro, John Corde, Christian Orellana, Jose Quintuna-Guaman, Frank Tarsillo and Ryan Stack (collectively, the "City Defendants"). Defendant Frank Tarsillo, one of the City Defendants, filed a separate and supplemental motion to dismiss based on untimely service. These motions were referred to Magistrate Judge Jennifer E. Willis. She issued a Report and Recommendation, dated January 21, 2026 (the "Report"), recommending dismissal of all claims except one claim against the City Defendants. For the reasons below, the Report's recommendations to dismiss are adopted, Tarsillo's motion is denied as moot, and the Complaint is dismissed in full.

## I.    BACKGROUND

Plaintiff is proceeding pro se. The Complaint asserts claims against the State Defendants under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988; section 504 of the Rehabilitation Act, 29 U.S.C. § 704, and the Americans with Disabilities Act ("ADA"). The Complaint asserts claims against the City Defendants for unlawful imprisonment, unlawful search and retaliation under 42

U.S.C. § 1983, as well as a discrimination claim based on the ADA.  The Complaint also asserts state law claims against the State Defendants and the City Defendants, including defamation, negligent or intentional infliction of emotional distress and negligent supervision under state law.

### A.    Factual Background

The following facts are taken from the Complaint and documents integral to the Complaint.  *See Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).  The facts are construed in the light most favorable to Plaintiff as the non-moving party and are assumed to be true for the purpose of this motion.  *See Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024); *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023).

Plaintiff is Caucasian and has disabilities due in part to a traumatic brain injury.  This injury causes her "migraines and vertigo triggered by exposure to chemical irritants including cigarette smoke and vape fumes . . . and dehydrating chemical[s] such as formaldehyde."  Plaintiff also has mobility issues caused by an accident.

Plaintiff resides in affordable housing that is a "disability unit" equipped with accessible appliances and safety features.  Since the beginning of her lease in September 2017, she has complained to her landlord about problems with her apartment, the most serious of which concerned fumes in the building from cigarette smoke, vape smoke and the burning of a cleaning agent, all of which are caused by Plaintiff's downstairs neighbor.  When Plaintiff raised these concerns with her landlord, she was denied service.  As a result, she sought assistance from the New York City Commission on Human Rights ("CCHR").

After CCHR refused to bring a complaint on her behalf, Plaintiff sought assistance from the U.S. Department of Housing and Urban Development ("HUD").  On April 10, 2023, HUD referred the complaint to the New York State Division of Human Rights ("DHR").  On May 17, 2023, DHR mailed Plaintiff a complaint to sign.  On October 10, 2023, DHR contacted Plaintiff

to submit a rebuttal to the landlord's response to the DHR complaint. Plaintiff was given only until October 23, 2023, to submit a rebuttal, even though DHR had had the landlord's response since July 19, 2023. Plaintiff asked for a 30-day extension due to her disability but was granted only two weeks by Defendant Chelsea John. On appeal from the denial of the full requested extension, Defendant Herrion, a director in the disability department, granted the full extension. Plaintiff then requested that her complaint be transferred to DHR's disability department. Chelsea John denied the request.

On May 2, 2023, while the DHR investigation was ongoing, Plaintiff explained her concerns, by telephone, to DHR employees Candace Tyndall and Chelsea John. During the call, "[a]fter relating the horrors of her CCHR experience, Plaintiff, perhaps a bit emotional from having to relive the traumatizing events in her mind, made a last tearful plea imploring DHR to take her suffering seriously and not dismiss it as imaginary, exaggerated or unimportant as CCHR did." Defendants Candace Tyndall and Chelsea John then called the NYPD to report that Plaintiff was suicidal. From around 6:00 P.M. to 10:00 P.M., Plaintiff's cell phone was off. Around midnight, Plaintiff received a phone call from an NYPD officer who said that the police were at Plaintiff's apartment because a suicide threat had been reported. When Plaintiff arrived home at 12:45 A.M., she was met by Defendant police officers Corde, Castro, Orellana and Quintuna-Guaman. Plaintiff attempted to persuade them that no intervention was needed, but the officers called FDNY EMS. When Plaintiff pointed out the danger of denying her any right to refute the claim before being taken by force, the officers confirmed that this was their policy and protocol. After twenty minutes of Plaintiff attempting to reason with the police and EMTs, Police Officer Chandler Castro "got very aggressive and threaten[ed] to handcuff Plaintiff to a stretcher and take her by force if she didn't walk herself out of the building and get in the ambulance." Plaintiff ultimately agreed to take the ambulance to the hospital "for no other reason

3

than complete terror and fear of another assault by the officers and further injury to her existing injuries." At the hospital, Plaintiff was determined not to be suicidal but had to spend the night in the psychiatric ward until she was able to return home. When she arrived home, she believed her apartment had been illegally searched in her absence. Plaintiff's belongings were on the floor, boxes were overturned and banners from a peace rally Plaintiff had attended were unrolled.

On May 10, 2024, Defendant Chelsea John issued DHR's Determination and Order After Investigation (the "DHR Order"). The DHR Order dismissed the DHR complaint, finding that "there is NO PROBABLE CAUSE to believe that the respondents [(the landlord and property managers)] have engaged in or are engaging in the unlawful discriminatory practice complained of." According to the DHR Order, the DHR's investigation included speaking to the parties and witnesses and reviewing written correspondence, audio and video recordings and other documents. DHR also made twenty-nine tenant calls, two of which were successful. One tenant and one former tenant reported not having disabilities and not smelling any smoke. DHR found that the respondent landlord had "engaged in the interactive process with [Plaintiff] by offering her a transfer to a mobility impaired unit, an air purifier at Respondents' expense, and to . . . change the air filters and clean out drains that may be emanating unpleasant fumes and odors." The DHR Order informed Plaintiff of her right to appeal the decision to the New York State Supreme Court.

### B.    The Report

The Report recommends that the State Defendants' Motion to Dismiss be granted in its entirety and the City Defendants' Motion to Dismiss be granted as to all claims, except the unlawful imprisonment § 1983 claim. The Report further recommends granting Plaintiff leave to amend the Complaint.

Plaintiff timely filed objections to the Report (the "Objections") challenging the recommendations to dismiss, except the Objections did not challenge dismissal of the § 1981 claim against the State Defendants, which Plaintiff concedes should be dismissed with prejudice. The City Defendants did not file an objection to the recommendation to deny dismissal of the unlawful imprisonment § 1983 claim.

## II.    STANDARD

### A.    Review of Findings or Recommendations by a Magistrate Judge

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "A proper objection must be specific" and "generally may not raise new arguments not previously made before the magistrate judge." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025).[1] "But where a litigant's objections take issue with a specific legal conclusion in the report and recommendation, they should be considered *de novo*, even if they repeat an argument raised before the magistrate judge." *Knight v. City of New York*, 164 F.4th 173, 177 (2d Cir. 2026). "De novo review means the district judge makes an independent determination of the portions of the Report that were properly objected to and does not defer to the magistrate judge's conclusions." *Nyamu v. Portfolio Recovery Assocs., LLC*, No. 24 Civ. 6861, 2025 WL 2753163, at *2 (S.D.N.Y. Sept. 26, 2025).

A district court may review any portion of a report and recommendation for clear error when that portion is not objected to or "when the objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

arguments set forth in the original petition." *Nambiar*, 158 F.4th at 359, 361. "Under the deferential clear-error standard of review, a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Toalombo Yanez v. Bondi*, 140 F.4th 35, 44 (2d Cir. 2025).

### B.    Review of Pro Se Pleadings

"[P]ro se submissions are reviewed with special solicitude and must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023). "But solicitude for *pro se* litigants does not require us to excuse failure to comply with understandable procedural rules and mandatory deadlines." *Kotler v. Jubert*, 986 F.3d 147, 156 (2d Cir. 2021).

### C.    Motion to Dismiss for Failure to State a Claim

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider conclusory allegations or legal conclusions couched as factual allegations. *See Herrera*, 84 F.4th at 113. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] . . . claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). Additionally, a plaintiff may not amend the complaint by making statements in a brief. *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 170 (2d Cir. 2025).

6

**III.    DISCUSSION**

    **A.    Claims Against the State Defendants**

        **1.    Sovereign Immunity**

The State Defendants seek to dismiss "the official capacity" and "municipal liability" claims against them -- except the Rehabilitation Act claim -- for lack of subject matter jurisdiction based on sovereign immunity under the Eleventh Amendment.  All of the Complaint's claims against the individual State Defendants are brought "in their official and individual capacities" and against the State are brought "for its municipal liability."  The Report recommends dismissal of these claims, except does not address the § 1988 claim.  On de novo review, this motion is granted.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39, (2021).  "An action against a state official in his official capacity is deemed an action against the state itself which possesses sovereign immunity under the Eleventh Amendment." *Walden v. Kosinski*, 153 F.4th 118, 133 (2d Cir. 2025).

"The *Ex parte Young* doctrine provides a narrow exception to Eleventh Amendment immunity that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Unkechaug Indian Nation v. Seggos*, 126 F.4th 822, 829 (2d Cir.) (citing *Ex parte Young*, 209 U.S. 123 (1908)), *cert. denied sub nom. Unkechaug Indian Nation v. Lefton*, 146 S. Ct. 113 (2025).  "In determining whether a litigant's claim falls under the *Ex parte Young* exception, we ask two questions:  whether the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *T.W. v. N.Y. State Bd. of L. Exam'rs*, 110 F.4th 71, 91 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 2700 (2025).

The Objections invoke the *Ex parte Young* exception to counter the State Defendants'
claim of sovereign immunity on the ground that "Plaintiff seeks prospective injunctive relief --
vacatur of DHR's defective 'no probable cause' Determination and Order and remand for a
proper, expedited investigation." This argument is unpersuasive. First, the Complaint seeks only
damages and an "annulment" of the DHR Order, not injunctive relief. Second, even if the
Complaint were amended to demand some future conduct by DHR, the Complaint does not allege
an ongoing violation of federal law. "[T]he doctrine of *Ex parte Young* permits federal courts to
grant injunctions against state officials, but it only permits injunctions to prevent future violations
of federal law," *id.* at 94, not to remedy past violations. The Complaint's core allegations of
wrongdoing by the State Defendants are retrospective grievances about prior completed conduct
-- i.e., DHR's handling and ultimate rejection of Plaintiff's disability claims, and DHR's
reporting Plaintiff's suicide threat to the police. The relief sought for these past wrongs is
retroactive, not prospective. The *Ex parte Young* exception to sovereign immunity does not
apply.

All claims against the State and claims against the individual State Defendants in their
official capacities are dismissed. The discussion below relates to the individual State Defendants
only in their individual capacities.

### 2.    Section 1981

The § 1981 claim is dismissed with prejudice. Plaintiff withdrew this claim in her
original opposition to the motions to dismiss. The Objections concede that this claim "should be
dismissed with prejudice."

### 3.    Section 1983

The State Defendants move to dismiss the § 1983 claims. The Complaint alleges that the
State Defendants violated several federal rights, under (a) the Equal Protection Clause, (b) the

Due Process Clause, (c) the ADA, (d) the Fair Housing Act ("FHA") and (e) the Rehabilitation Act.

"To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015). It is undisputed that the individual State Defendants were acting under color of state law in the DHR investigation process. As to the second element, the Report concludes that the Complaint fails to state § 1983 claims against DHR employees based on a violation of federal rights. The Objections argue the Report ignores supporting evidence and applicable authorities in reaching that conclusion. On de novo review, the § 1983 claims against the individual State Defendants are dismissed because, as explained below, the Complaint fails to state a constitutional deprivation or violation of federal law.

### a. Equal Protection

The Complaint alleges two principal Equal Protection Clause violations: (1) the DHR Order's determination of "no probable cause" denied Plaintiff equal protection of her disability rights under the FHA, and (2) certain State Defendants acted with racial animus towards Plaintiff because of her Caucasian race. The Report does not address the first alleged violation. As to the second, the Report concludes that the Complaint does not plead facts to support an inference of unlawful racial discrimination, either by pointing to animus by individual state actors, or by failing to serve members of a protected class, and finds that the allegation of racial animus as the reason for the DHR Order's finding of no probable cause is speculative, conclusory and the kind of "bare allegation" that does not give rise to an inference of discrimination. The Objections argue that the "DHR's arbitrary delays, refusal to accommodate Plaintiff's traumatic brain injury (TBI), selective presentation of evidence, failure to interview witnesses, biased tenant survey, and

refusing to acknowledge Plaintiff's disability rights" in arriving at the DHR Order constituted

"denial of due process and equal protection." While this alleged treatment is no doubt offensive,

the Objections do not cite legally required facts in the Complaint to show that the conduct was

because of Plaintiff's race or disability.

The first alleged violation -- that the DHR Order denied Plaintiff equal protection of her

disability rights -- fails to state a claim. "[D]isability is not a suspect classification under the

Equal Protection Clause. Moreover, it is well established that the Equal Protection Clause cannot

provide a basis for asserting claims for reasonable accommodations." *Chick v. Cnty. of Suffolk*,

546 F. App'x 58, 60 (2d Cir. 2013) (summary order); *accord Baptiste v. City Univ. of N.Y.*, 680

F. Supp. 3d 415, 425 (S.D.N.Y. 2023) (dismissing a § 1983 equal protection claim based on

disability discrimination because "freedom from discrimination on the basis of disability is a right

secured by statute, not by the Constitution"); *see also Bd. of Trs. of Univ. of Alabama v. Garrett*,

531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they

have to come from positive law and not through the Equal Protection Clause."). If the claim

alternatively were assessed under a "class of one" theory, the Complaint would have to allege

(1) that Plaintiff was intentionally treated differently from others similarly situated and (2) that

there is no rational basis for the different treatment. *Hu v. City of New York*, 927 F.3d 81, 91 (2d

Cir. 2019). The Complaint does not identify a non-disabled comparator, and the DHR Order

provides a reasoned analysis sufficient to withstand rational basis review. *See Spring v.

Allegany-Limestone Cent. Sch. Dist.*, 655 F. App'x 25, 28 (2d Cir. 2016) (summary order)

(affirming dismissal of a disability-based equal protection claim absent allegations of disparate

treatment showing selective treatment or that such treatment was irrational). The Complaint's

disability claims under the ADA (rather than the Equal Protection Clause) are discussed below.

10

Regarding the Complaint's second alleged equal protection violation, "[t]o state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against [her] on the basis of his race." *Pan v. City of Niagara Falls*, No. 23-7513, 2025 WL 1169057, at *2 (2d Cir. Apr. 22, 2025) (summary order); *accord Rodriguez v. Pascal*, No. 24 Civ. 6085, 2026 WL 1078086, at *3 (S.D.N.Y. Apr. 20, 2026). Alternatively, a "class of one" equal protection claim may be brought where the plaintiff alleges "[1] that she has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Hu*, 927 F.3d at 91; *see also Pan*, 2025 WL 1169057, at *2. "In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Hu*, 927 F.3d at 92. "More precisely, a plaintiff must establish that [s]he and a comparator are prima facie identical by showing that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.*; *accord Demarest v. Town of Underhill*, No. 24-147, 2025 WL 88417, at *2 (2d Cir. Jan. 14) (summary order), *cert. denied*, 145 S. Ct. 2706 (2025).

The Complaint lacks facts to support an inference of intentional discrimination on the basis of race by any of the individual State Defendants. The Complaint makes conclusory allegations such as, "both CCHR and DHR inexplicably and irrationally show more concern for [Plaintiff's downstairs neighbors] than they do for the Plaintiff." The Complaint then speculates the existence of discriminatory purpose:

> The only explanation that seems obvious, and fits into these agencies['] stated DEI goals, is the fact that the neighbors are Hispanic minorities. This unlawful racial bias is depriving the Plaintiff equal protection under the law concerning her

11

disability rights, while at the same time discriminating against Plaintiff based on her Caucasian race.  This is a two fold discrimination claim because one discrimination is leading to the other.

The Complaint further asserts that the DHR Order's "irrational, broad and complete denial of protection for a disabled Plaintiff must be motivated by something.  Plaintiff contends that the most likely reason is born from the stated anti-Caucasian racist priorities espoused by both CCHR and DHR . . . hence racial discrimination."

The Complaint fails to plead facts to support these speculations, such as a disparaging remark about Caucasians or any other conduct that shows racial animus.  *See, e.g.*, *Chinese Am. Citizens All. Greater N.Y. v. N.Y.C. Dep't of Educ.*, 802 F. Supp. 3d 483, 525-26 (S.D.N.Y. 2025) (holding that a facially neutral sign ban did not violate equal protection where the record contained no evidence that the official who issued it anticipated or targeted an Asian American protest, harbored anti-Asian bias, ever made discriminatory remarks about Asians or acted with any invidious discriminatory purpose); *Lindsay v. N.Y. Child Support OCSS*, No. 25 Civ. 2232, 2026 WL 962464, at *8 (S.D.N.Y. Apr. 8, 2026) (holding that allegations of a racially disparate impact from facially neutral child support enforcement laws, unaccompanied by any facts showing discriminatory intent or purpose, fail to state an equal protection claim).

To the extent the Equal Protection Clause claim is construed as a "class of one" claim, it fails because the Complaint fails to allege a "prima facie identical" comparator.  The Complaint alleges only that the State Defendants had more concern for Plaintiff's downstairs neighbors. However, the Complaint does not allege differential treatment, for example, that the State Defendants did not dismiss a similar complaint by a non-Caucasian tenant whose circumstances were the same as Plaintiff's.  The Complaint fails to state a claim of racial discrimination in violation of the Equal Protection Clause.

12

### b. Due Process

The Complaint alleges that State Defendants Chelsea John and Candace Tyndall made false statements about Plaintiff's risk of suicide, causing the City Defendants to violate her Due Process rights by transporting her to the hospital without her consent and searching her apartment.  The Complaint refers to the suicide-risk report as "false" and speculates whether it was made "to retaliate against Plaintiff on behalf of Ms. John's prior employer, and sister agency; or, simply done to intimidate Plaintiff and 'put her in her place' for daring to think she deserved any prioritization due to her disability and pain."  The Report recommends dismissing the claim. The Objections argue that Plaintiff's due process rights were violated by:  (i) the report that Plaintiff was suicidal and (ii) an additional reason, not pleaded as a due process violation in the Complaint -- DHR's delays and other procedural defects in arriving at the DHR Order.  The due process claim is dismissed.

"A procedural due process claim is composed of two elements:  (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."  *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022).  "To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation."  *Alexander v. City of Syracuse*, 132 F.4th 129, 160 (2d Cir. 2025); *see also Chislett v. N.Y.C. Dep't of Educ.*, 157 F.4th 172, 184 (2d Cir. 2025) ("A natural person may be liable under § 1983 only if the official was personally involved in the alleged deprivation.").  "To proximately cause a procedural due-process violation, therefore, a defendant must be personally involved in the violation."  *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).  Any one of five circumstances is sufficient to show personal involvement:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of the plaintiffs by failing to act on information indicating that unconstitutional acts were occurring.

*Id.*

Applying this test, the Complaint does not allege that any of the State Defendants was personally involved in violating Plaintiff's due process rights. The Complaint alleges only that Chelsea John or Candace Tyndall reported a suicide threat to the police, whose conduct is addressed below.

To the extent that the Complaint alleges that Plaintiff was entitled to some due process before John and Tyndall called the police or before the police transported her, that argument is without merit. *See Mawhirt v. Ahmed*, 8 F. App'x 125, 127 (2d Cir. 2001) (summary order) ("The officers also did not violate [the plaintiff]'s procedural due process rights when they transported him to [a hospital] in October 1995 because he was not entitled to a hearing before being taken to a hospital or psychiatric emergency program."); *Amato v. Hartnett*, 936 F. Supp. 2d 416, 436 (S.D.N.Y. 2013) (same). The due process claim against the State Defendants is dismissed.

Regarding the Objections' new argument that the DHR's investigation and the DHR Order violated Plaintiff's due process rights, that objection is overruled for two reasons. First, Plaintiff cannot amend the Complaint to add another due process claim through the Objections. *See Sherman*, 156 F.4th at 170. Second, even if this claim were included in the Complaint, the alleged procedural shortcomings would not rise to the level of constitutional deprivations. For example, although Plaintiff was initially denied a 30-day extension to rebut the landlord's

14

response to her complaint, Plaintiff subsequently was granted the extension. To the extent

Plaintiff's concerns with the DHR process represent dissatisfaction with the DHR Order itself,

that dissatisfaction is not a constitutional deprivation. "The Due Process Clause, of course,

commands a process, not a particular result." *Proctor v. LeClaire*, 846 F.3d 597, 612 (2d Cir.

2017).

### c. ADA

The Complaint asserts a § 1983 claim against the State Defendants for denying Plaintiff

equal protection with respect to her rights under the ADA. The Complaint alleges that the State

Defendants failed to investigate properly Plaintiff's complaints against her landlord and denied

Plaintiff's requests for disability accommodations in connection with the investigation. The

Complaint alleges that (i) the State Defendants failed to enforce Plaintiff's federally protected

disability rights by inadequately enforcing her building's no-smoking policy and (ii) the DHR

Order was based on flawed logic and failed to address Plaintiff's evidence.

The Report concludes that the claim against the State Defendants based on Title II of the

ADA is not actionable under § 1983 because the ADA creates a remedial scheme that is

sufficiently comprehensive to demonstrate congressional intent to preclude suits under § 1983.

The Objections do not take issue with this legal conclusion, which is therefore assessed under a

clear error standard. *Nambiar*, 158 F.4th at 359.

It was not clearly erroneous for the Report to conclude that the ADA's comprehensive

remedial scheme forecloses a § 1983 claim predicated on ADA violations. The Second Circuit

has not addressed the issue, but "every court of appeals to consider this issue, as well as a

majority of the district courts in this Circuit, have . . . concluded Section 1983 is not available to

provide a remedy for alleged violations of rights under the ADA." *Durr v. Slator*, 558 F. Supp.

3d 1, 34 (N.D.N.Y. 2021) (collecting cases). The Second Circuit has addressed a closely

15

analogous question and held that § 1983 claims to enforce the Rehabilitation Act are foreclosed, citing favorably decisions of sister circuits addressing both the ADA and the Rehabilitation Act. *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 83 (2d Cir. 2020) (citing, *e.g.*, *Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 448-49 (7th Cir. 2016) and *Ramirez-Senda v. Puerto Rico*, 528 F.3d 9, 13 n.3 (1st Cir. 2008)).  The recommendation to dismiss the § 1983 ADA claim is adopted.

### d.  FHA

The State Defendants move to dismiss the Complaint's § 1983 claim based on a violation of the FHA.  The Complaint alleges that the State Defendants denied Plaintiff "equal protection under the law with regard to her rights under the . . . FHA," primarily by discriminating against a disabled person by failing to enforce the building's no-smoking policy.  The Report does not discuss the FHA in this context.  On de novo review, the § 1983 claim based on a violation of the FHA is dismissed.  Plaintiff clarifies in her original opposition that she "is fully aware that DHR is not a housing provider and she makes no claims that the State is directly violating FHA," and that she "states in her Amended Complaint that the State's offense is their refusal to ***enforce*** . . . FHA law on Plaintiff's landlord and ensure Plaintiff equal protection under that law."

The State Defendants are not liable under § 1983 for failing to enforce Plaintiff's FHA rights against the landlord, because the alleged FHA violation concerns the landlord's conduct, not the State Defendants'.  Section 1983 reaches only conduct that is "fairly attributable to the State," and its under-color-of-state-law element "excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 50 (1999); *accord Levine v. Association of Legal Aid Attorneys, UAW Loc. 2325*, No. 24 Civ. 2733, 2025 WL 1795961, at *3 (S.D.N.Y. June 30, 2025).  Relatedly, § 1983 reaches only a defendant who "subjects, or causes to be subjected," a person to the deprivation of a federal right, and so a

16

plaintiff must allege that the defendant "caused the deprivation of that right." *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 686 & n.7 (2d Cir. 1998); *accord Battle v. NYC Dep't of Corr.*, No. 25 Civ. 4169, 2026 WL 1134852, at *3 (S.D.N.Y. Apr. 27, 2026).  There is no § 1983 liability where the causal connection between the defendant's conduct and the injury is "remote rather than direct." *Taylor*, 143 F.3d at 686; *accord Battle*, 2026 WL 1134852, at *3.  Here, the Complaint alleges that the landlord's discriminatory conduct subjected Plaintiff to a deprivation of FHA rights.  The State Defendants' asserted failure to enforce against the landlord is, at most, a remote cause, not a direct cause.  *Cf. Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) (holding that there is no constitutionally protected interest in a government's enforcement of a restraining order against a private party); *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) (concluding that a State's failure to protect an individual against private conduct does not itself violate the plaintiff's constitutional rights); *see also Milhouse v. NYC (MTA)*, No. 25 Civ. 5357, 2026 WL 1415398, at *2-3 (S.D.N.Y. May 19, 2026) (applying these principles and *Sullivan*, 526 U.S. 40, to dismiss § 1983 claims premised on private conduct and on a failure to protect against private harm).  The allegation that the State Defendants failed to act against the landlord therefore does not supply the state action or direct causal link that § 1983 requires.  The § 1983 FHA claim is dismissed.

### 4.    Sections 1985 and 1986

The State Defendants move to dismiss the §§ 1985 and 1986 conspiracy claims.  The Report recommends dismissing these claims because the Complaint's allegations of conspiracy are conclusory.  The Objections argue that the conspiracy allegations are sufficiently pleaded.  The §§ 1985 and 1986 are dismissed, but for different reasons than those stated in the Report.

The Complaint asserts a violation of § 1985(2) when Defendants Chelsea John and Candace Tyndall conspired to make a false report that Plaintiff was suicidal, causing interference

17

with her rights under specified federal laws and violations of state common law.  The claim is dismissed because § 1985(2) is inapplicable here.  Titled "Obstructing justice; intimidating party, witness, or juror," § 1985(2) makes it unlawful to interfere with court proceedings.  42 U.S.C. § 1985(2).  The first sentence of the provision deals with federal court proceedings, and the second sentence deals with state court proceedings.  *See Kush v. Rutledge*, 460 U.S. 719, 725 (1983); *Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 406 (S.D.N.Y. 2004) (Chin, J.) (explaining that § 1985(2) provides for recovery in two instances, with the first clause imposing liability for interference with federal judicial proceedings and the second clause for interference with state judicial proceedings); *Langton v. Town of Chester*, No. 14 Civ. 9474, 2017 WL 6988708, at *6 (S.D.N.Y. Sept. 26, 2017), *report and recommendation adopted sub nom. Langton v. Town of Chester Libr. Bd.*, 2020 WL 2850898 (S.D.N.Y. June 1, 2020).  The Complaint does not allege interference with court proceedings.

The Complaint asserts violations of § 1985(3) when the State Defendants (i) colluded to misrepresent FHA law and Plaintiff's corresponding disability rights in the DHR Order and (ii) conspired to deny Plaintiff equal protection under law with respect to her rights under the ADA and FHA and were negligent in preventing her abuse and harm due to a lack of protection by these laws.

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege:  1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *accord Abadi v. Greyhound Lines, Inc.*, No. 25-38, 2026 WL 1064591, at *2 (2d Cir. Apr. 20, 2026) (summary order).  "The conspiracy must also be motivated by some

racial or perhaps otherwise class-based, invidious discriminatory animus." *Dolan*, 794 F.3d at 296; *accord Finn v. New York*, No. 23-126, 2023 WL 7013414, at *2 (2d Cir. Oct. 25, 2023) (summary order).

The claims asserted under § 1985(3) are dismissed because the Complaint does not allege facts showing racial or other class-based discriminatory animus. As discussed above, the Complaint does not allege facts showing that the DHR Order and the State Defendants' related investigation, or the police report that Plaintiff was suicidal, were because of Plaintiff's race or disability.

The § 1986 claim is dismissed because the § 1985 claims are dismissed. "[A] § 1986 claim must be predicated on a valid § 1985 claim." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000); *accord Thomas v. Genova*, No. 23-7452, 2025 WL 583182, at *4 (2d Cir. Feb. 24, 2025) (summary order).

### 5.    Section 1988

The purported 42 U.S.C. § 1988 claims are dismissed. The Complaint cites § 1988 in several claims against the State Defendants and the City Defendants. Neither the Report nor the Objections address § 1988. The Complaint does not state a claim under § 1988 because § 1988 does not independently provide a federal cause of action. *Moor v. Alameda County*, 411 U.S. 693, 702-06 (1973); *accord MacNeal v. City of New York*, No. 23 Civ. 5890, 2025 WL 640666, at *10 (S.D.N.Y. Feb. 27, 2025).

### 6.    ADA and Rehabilitation Act

The State Defendants move to dismiss the ADA and Rehabilitation Act claims. The Complaint alleges two categories of ADA claims: (i) failure to provide reasonable accommodations and (ii) failure to enforce Plaintiff's disability rights. In the first category, the Complaint alleges that Defendant Chelsea John's initial denial of Plaintiff's request for an

19

extension to file her rebuttal (which Defendant Herrion subsequently granted) and Defendant Chelsea John's later denial of Plaintiff's request to have her entire case transferred to the DHR's disability unit constituted denials of reasonable accommodations.  In the second category, the Complaint alleges that the State Defendants failed to protect Plaintiff's rights under the ADA by failing to enforce the building's no-smoking policy and basing the DHR Order on flawed logic and an incomplete review of the evidence.  The Rehabilitation Act claim also stems from the State Defendants' alleged failure to enforce Plaintiff's disability rights.

The Report concludes that the Complaint fails to state a violation of the ADA or Rehabilitation Act because Plaintiff was not deprived of meaningful access to DHR's investigatory process.  The Objections reiterate the categories of allegations discussed above, adding arguments that Defendant Chelsea John demonstrated disability animus by making the suicide-risk report, denying the initial extension and using a "dismissing and spiteful tone" in the DHR Order.  With respect to the Rehabilitation Act, the Objections argue that the State Defendants denied Plaintiff's requested accommodations, ignored evidence, failed to interview key witnesses and relied on a biased tenant survey in the DHR Order.  The Objections further argue that DHR employees did not protect Plaintiff from her landlord's failure to address the fumes entering her apartment and inaccessible doors in the building, including by issuing the "no probable cause" determination in the DHR Order.  The ADA and Rehabilitation Act claims are dismissed.

Title II of the ADA and section 504 of the Rehabilitation Act prohibit public entities and federally funded entities from excluding individuals with disabilities from participation in those entities' services, denying benefits of those services to individuals with disabilities or discriminating against individuals with disabilities.  *See* 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794(a) (Rehabilitation Act).  "Because the standards imposed by Title II [of the ADA] on public

20

entities are generally equivalent to those of § 504 of the Rehabilitation Act, we treat claims under the two statutes identically in most cases." *Tardif v. City of New York*, 991 F.3d 394, 406 n.10 (2d Cir. 2021).

To state a claim under either statute, the ADA or the Rehabilitation Act, a complaint must allege "(1) that [the plaintiff] is a qualified individual with a disability; (2) that [the plaintiff] was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [the plaintiff's] disability." *Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016); *see also Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (stating the same elements for a claim under Title II of the ADA, which prohibits discrimination against individuals with disabilities in public services, programs and activities). "Exclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016). Under a reasonable accommodation theory, a plaintiff asserts "as a practical matter [having been] denied meaningful access to services, programs or activities to which he or she was legally entitled." *Hamilton*, 3 F.4th at 91. The reasonableness review is "fact-specific." *Id.* "[T]he hallmark of a reasonable accommodation is effectiveness," and "a reasonable accommodation need not be perfect or the one most strongly preferred by the plaintiff, but it still must be effective." *Id.*

Under these standards, the Complaint fails to state a claim. The reasonable accommodation allegations do not state a legally sufficient claim. Although Defendant Chelsea John initially denied the full extension Plaintiff requested to submit rebuttals, the Complaint states that Defendant Herrion subsequently granted the extension, providing the accommodation. Also, the State Defendants' decision to deny Plaintiff's request to transfer the investigation from the housing unit to the disability unit did not exclude Plaintiff from the investigation process, nor

21

deny Plaintiff meaningful access. According to the Complaint, Plaintiff participated throughout the process, including by submitting her complaint and documentation, speaking with DHR employees, providing information and submitting a rebuttal. Although Plaintiff may not have received her "most strongly preferred" accommodation in having her case transferred, the Complaint fails to plead facts showing that a lack of accommodation denied her "meaningful access" to the investigative process.

Regarding the second category, the failure to enforce allegations do not state a plausible ADA or Rehabilitation Act claim. The allegations that the State Defendants failed to consider Plaintiff's evidence and relied on flawed logic and faulty information in the DHR Order do not give rise to an inference of intentional discrimination "due to" Plaintiff's disability; nor does the fact that the DHR Order reached a conclusion with which Plaintiff disagrees. The ADA and Rehabilitation Act claims against the State Defendants are dismissed.

### 7.    Retaliation

The Complaint asserts that the State Defendants retaliated against Plaintiff on behalf of DHR and CCHR by making the suicide-risk report after Plaintiff called to follow up about her case on May 2, 2023. The Complaint alleges that the suicide-risk report was retaliatory following Plaintiff's call with Defendants Chelsea John and Candace Tyndall, in which Plaintiff followed up about her case, complained of delays, implored DHR to take her suffering seriously and mentioned her lawsuit against CCHR. The Complaint cites §§ 1983 and 1988 and New York common law as the bases for the retaliation claim. The Report construes the retaliation claim as a First Amendment retaliation claim enforceable under § 1983 and concludes that the claim is speculative and falls short of establishing a causal connection between the adverse action and protected speech. The Complaint fails to state a claim for retaliation under the First Amendment.

22

To state a First Amendment retaliation claim, a plaintiff "must plausibly allege that (1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech." *Quinones v. City of Binghamton*, 997 F.3d 461, 466 (2d Cir. 2021). "To show causation, a plaintiff must show that the protected speech was a substantial motivating factor" in the adverse action. *Heim v. Daniel*, 81 F.4th 212, 222 (2d Cir. 2023); *see also Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) (explaining that for a retaliatory arrest claim, the plaintiff must show that "retaliation was a substantial or motivating factor behind the arrest"). "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015); *accord Lyster v. Amazon.com Servs., LLC*, No. 25 Civ. 9423, 2026 WL 1910305, at *7 (S.D.N.Y. July 2, 2026).

The Complaint does not allege facts sufficient to show that Plaintiff's protected speech prompted the suicide-risk report under either method of showing causation. The Complaint alleges, "Plaintiff wonders whether the suicide report was made to retaliate against Plaintiff on behalf of Ms. John's prior employer [CCHR], and sister agency; or, simply done to intimidate Plaintiff and 'put her in her place' for daring to think she deserved any prioritization due to her disability and pain." Although the Complaint alleges that Defendant Chelsea John made the suicide-risk report after Plaintiff called to follow up on her case on May 2, 2023, that does not "nudge[] [the retaliation claim] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, particularly in light of the fact that the DHR Event History (which is properly considered as integral to the Complaint) reflects that Plaintiff stated on calls on May 1 and May 2, 2023, that

23

she was experiencing a "lot of pain and does not know how long she can go on" and that she was previously on a suicide watch. The Complaint fails to allege a sufficient factual basis for the claim that the suicide-risk report was retaliatory.

The Objections suggest an ADA Title V retaliation claim, which does not appear in the Complaint. Amending the Complaint to add such a claim would be futile because the causation requirement for ADA retaliation is at least as demanding as the First Amendment standard. *See Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) (affirming dismissal of an ADA retaliation claim where the plaintiff failed to plausibly allege that "but for" his protected activity, the adverse action would not have been taken and explaining that "[c]ausation may be shown either through direct evidence of retaliatory animus or indirectly, by showing that the protected activity was followed closely by discriminatory treatment"). Such an allegation is lacking here.

### B.    Claims Against the City Defendants

All of the Complaint's claims against the City Defendants arise in connection with the City Defendants' response to the report of the State Defendants that Plaintiff was a suicide risk -- the search of her apartment and transport to the hospital. The individual City Defendants are the police officers and EMT personnel who were involved. The Complaint asserts claims against the individual City Defendants in both their official and individual capacities. Claims against City employees in their official capacities are treated as against the City and merge into the claims against the City. *See Quinones*, 997 F.3d at 466 n.2. Accordingly, the claims against the individual City Defendants are assessed in their individual capacity only. The claims against the City Defendants assert constitutional violations under § 1983 and a violation of the ADA. As explained below, these claims are dismissed.

24

### 1. Claims Against the Individual City Defendants Other Than Castro

All claims against the individual City Defendants (except Defendant Castro, who is discussed separately) are dismissed for failure to plead individual acts of misconduct. The Report recommends this result because the Complaint fails to plead any individual actions taken by them. Because the Objections do not address this deficiency, dismissal of these claims is reviewed for clear error.

Except for Castro, the allegations against the individual City Defendants at most establish that they were present during the May 3, 2023, wellness check and transport. Their mere presence does not provide "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Kaplan*, 999 F.3d at 854. The claims against individual City Defendants Orellana, Quintuna-Guaman, Corde, Tarsillo and Stack are dismissed for this reason, as well as the reasons discussed below regarding the legal insufficiency of the claims against the City Defendants.

The additional allegation against Defendant Castro is that, prior to the police transporting Plaintiff to the hospital after the suicide-risk report, Castro "got very aggressive and threated[ed] to handcuff Plaintiff to a stretcher and take her by force if she didn't . . . get in the ambulance." This is sufficiently individualized to avoid dismissal of the § 1983 unlawful imprisonment claim against Castro for failure to plead particularized facts. However, this claim against Castro is dismissed for the reasons discussed below regarding the legal insufficiency of the claim against the City Defendants.

### 2. Section 1983

The Complaint asserts three § 1983 claims against the City Defendants: (1) unlawful imprisonment, (2) unlawful search and (3) retaliation in concert with the State Defendants. The City Defendants move to dismiss the § 1983 claims against them. The Report recommends allowing the unlawful imprisonment claim to proceed and dismissing the claims based on

25

unlawful search and retaliation.  All three of the § 1983 claims against the City Defendants are dismissed for the reasons explained below.

### a.  Claims Against the City -- *Monell* Liability Legal Framework

Under the Supreme Court's ruling in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable under 42 U.S.C. § 1983 only if the plaintiff can show "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023).  A complaint may satisfy the first element of a municipal policy or custom by pleading (1) an express rule or policy, (2) decisions or acts of a municipality's lawmakers or policymaking officials, (3) "practices so persistent and widespread as to practically have the force of law [and] may be pronounced or tacit and reflected in either action or inaction" or (4) the municipality's failure to train its employees that amounts to deliberate indifference.  *See Lucente v. County of Suffolk*, 980 F.3d 284, 297-98 (2d Cir. 2020).  A complaint may plead a "persistent and widespread" practice by alleging "sufficient instances of tolerant awareness by supervisors of [unconstitutional] conduct to support an inference that they had a policy, custom or usage of acquiescence." *Id.*

### b.  Unlawful Imprisonment

Contrary to the Report's recommendation, the unlawful imprisonment claim is dismissed. The Complaint asserts a § 1983 claim of unlawful imprisonment based on the City Defendants' transporting Plaintiff to the hospital following the State Defendants' report that she was a suicide risk.  The Report finds that the first two *Monell* requirements -- (i) policy or custom and (ii) causation -- were met.  The City Defendants did not object, and these findings are not clearly erroneous.  However, the Report recommends that this claim proceed, finding that the third *Monell* requirement, a constitutional violation, cannot be determined in this case without

discovery.  On clear error review, that finding and the resulting recommendation were in error because the City Defendants had probable cause to subject Plaintiff to a psychological evaluation as a suicide risk.

Although the Complaint refers to the claim as "unlawful imprisonment," that term is used interchangeably in legal analysis with "false arrest."  *See, e.g.*, *Liranzo v. United States*, 690 F.3d 78, 91 n.13 (2d Cir. 2012).  "[P]robable cause is a complete defense to a false arrest claim." *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022).  To have probable cause for a mental health arrest, "police officers must have reasonable grounds for believing that the person seized is dangerous to herself or others."  *Id*. at 805.  "[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  *Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022); *People v. Guthrie*, 30 N.E.3d 880, 883 (N.Y. 2015) ("Probable cause" requires "merely information sufficient to support a *reasonable belief*").  "When making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers."  *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006); *accord Sander v. City of Mount Vernon*, No. 23 Civ. 6204, 2026 WL 1122401, at *6 (S.D.N.Y. Apr. 24, 2026). Additionally, "information gleaned from informants can be sufficient to justify the existence of probable cause unless the circumstances raise doubt as to the person's veracity."  *Jin v. City of New York*, 169 F.4th 373, 381 (2d Cir. 2026).  "When assessing the existence of probable cause based on an informant's information, the core question is whether the information is reliable." *United States v. McKenzie*, 13 F.4th 223, 237-38 (2d Cir. 2021).  "[A]n identified citizen informant is presumed to be reliable."  *Jin*, 169 F.4th at 381.  "A tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated is especially significant in establishing probable cause."  *Panetta*, 460 F.3d at 395;

*accord United States v. Deas*, No. 17 Cr. 719, 2018 WL 3023282, at *5 (S.D.N.Y. June 15, 2018).

The State Defendants' suicide-risk report provided the City Defendants a reasonable basis for believing that Plaintiff was a danger to herself.  Having received the report from state officials, the City Defendants were not legally required (or equipped) "to assess the situation on-site" as the Complaint asserts.  Even crediting all of the Complaint's factual assertions, as required at the motion to dismiss stage, including that Plaintiff was not actually a suicide risk, the City Defendants had a reasonable basis to believe that Plaintiff was a danger to herself.  Accordingly, the unlawful imprisonment claim is dismissed.

### c.  Unlawful Search

The Report recommends dismissing the unlawful search claim because the Complaint "lacks any facts to establish it was in fact the police who entered and searched [Plaintiff's] apartment without a warrant."  The Objections do not address that claim.  The Report's finding of insufficient pleading was not clearly erroneous, and on that basis, the claim is dismissed.  The claim is dismissed against the City for the additional reason that the Complaint does not plead a municipal policy or custom of conducting such searches.

Leave to replead this claim to add facts showing that the search was conducted by the police pursuant to a policy or custom is denied as futile because the claim fails on the merits.  "An officer may enter a home without a warrant if he has an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury."  *Case v. Montana*, 607 U.S. 107, 119 (2026).  In *Case v. Montana*, the Supreme Court held that this test was satisfied when the police had an "objectively reasonable basis for believing that a homeowner intended to take his own life and, indeed, may already have shot himself."  *Id.* at 109.  As in *Case v. Montana*, a search of Plaintiff's apartment was objectively reasonable given the

28

reported suicide risk and the officers' inability for several hours to establish contact with Plaintiff through less intrusive means.

The Complaint asserts that the search of Plaintiff's apartment was unnecessary and unreasonable because the police told Plaintiff that they were given a full description of Plaintiff, including what she was wearing, and that only the doorman "could have" given the description, and he "would have seen her leaving the building."  Even if this speculation is regarded as factual and accepted as true, the Defendant police officers nevertheless had a reasonable basis to search Plaintiff's apartment when she could not be contacted or found for several hours following a suicide-risk report.  For example, the police could not rule out that Plaintiff had returned to the building unobserved by the doorman they spoke to.  Under those circumstances, it was "objectively reasonable" for the officers to search for Plaintiff in her apartment while they were unable to contact her.  *See id.* at 119.

### d.  Retaliation

The retaliation claim against the City Defendants is also dismissed.  The Complaint in substance asserts an aiding and abetting claim, that the City Defendants were assisting the State Defendants in retaliating against Plaintiff for exercising her First Amendment rights.  The Report recommends dismissing this claim because the Complaint pleads no causal connection between the City Defendants' conduct and any protected speech by Plaintiff and no facts to support "an elaborate inter-agency conspiracy" to retaliate against Plaintiff.  The Objections do not address this pleading deficiency.  The Report's finding is not clearly erroneous, and its recommendation to dismiss this claim is adopted.

### 3.  ADA

The City Defendants move to dismiss the ADA claims against them.  The Complaint asserts that the City Defendants violated Plaintiff's rights under the ADA by failing to assess her

29

and take due care when they transported her from her home, as part of a string of false abductions over ten years.  The Report recommends dismissing the ADA claims because the Complaint fails to state facts supporting an allegation that the City Defendants denied Plaintiff accommodations or interfered with her right to file complaints about others violating her rights.  The Objections assert that the City's pattern of using suicide checks to intimidate Plaintiff while she sought enforcement of her disability rights constitutes a failure to accommodate and retaliation in violation of the ADA.

The ADA claims against the City Defendants are dismissed because the Complaint and Objections misperceive what conduct is actionable under the ADA.  As discussed above, to state an ADA claim, a complaint must allege, among other things, "that such exclusion [from public services] or discrimination was due to [the plaintiff's] disability."  *Davis*, 821 F.3d at 259.  The Complaint's theory of liability is not that Plaintiff was denied benefits or treated differently because of her disability.  The Complaint does not plead facts to support that she was discriminated against by the City Defendants due to her disability.  Nor does the Complaint allege facts against the City Defendants to support that Plaintiff's "disability made it difficult in any way for her to access benefits . . . that were available to [similarly situated persons who were not disabled]."  *See Tardif*, 991 F.3d at 405.

### C.    Remaining State and Municipal Law Claims

The Complaint's remaining claims arise under state or municipal law.  "The district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018).  "[A] district court should not decline to exercise supplemental

30

jurisdiction unless it also determines that doing so would not promote the values articulated in *United Mine Workers of Am. v. Gibbs*:  economy, convenience, fairness, and comity." *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1996)).  "When § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors." *Id.* at 86.

The Court declines to exercise supplemental jurisdiction, as this case is still at the pleading stage.  Discovery was stayed pending the motion to dismiss.  Allowing state courts to hear state law claims promotes comity between the federal and state courts.  *See Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 404-05 (2d Cir. 2017) (Calabresi, J., concurring) ("[T]he default rule is that federal courts should not decide related state-law claims unless there is good reason for doing so . . . .  [O]ur circuit takes a very strong position that state issues should be decided by state courts."); *Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 481 (2d Cir. 2021) (holding that "the district court did not abuse its discretion in declining to exercise supplemental jurisdiction" when "federal claims were properly dismissed on summary judgment," and stating parenthetically that "[a]s a general proposition if all federal claims are dismissed before trial, the state claims should be dismissed as well").  Accordingly, Defendants' motions to dismiss the claims arising under state and municipal law are granted without prejudice to refiling in state court.

## IV.    LEAVE TO AMEND

A "court should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Where a district court cannot rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim, a pro se complaint should not be dismissed without granting leave to amend at least once."  *Elder v. McCarthy*, 967 F.3d 113, 132 (2d Cir. 2020).  Although courts generally take a liberal approach in permitting pro se

31

plaintiffs to amend their pleadings, "leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).

Plaintiff previously amended the original complaint, but before she had the benefit of a judicial decision explaining why her claims do not entitle her to the relief she seeks. If Plaintiff believes that she can cure the deficiencies identified in this Opinion & Order, she may (i) file a letter, no longer than three pages, seeking leave to file a Second Amended Complaint and explaining how the deficiencies are cured and (ii) attach to the letter the proposed Second Amended Complaint marked to show changes from the Amended Complaint filed at Dkt. 37. The letter and attachment must be filed no later than **August 27, 2026**, but Plaintiff may seek a reasonable extension if needed. Defendants will be permitted to respond by **September 24, 2026**.

Plaintiff is advised that if she chooses to propose a Second Amended Complaint, it must allege specific facts showing that she is entitled to relief for her claims, without relying on speculative or conclusory allegations. The claims against the State Defendants essentially arise from (i) DHR's investigation process, including Defendant Chelsea John's initial denial of the 30-day extension and denial of Plaintiff's requested transfer of her case to the disability unit, (ii) the DHR Order which found in the landlord's favor and did not consider the evidence Plaintiff desired and (iii) the May 2, 2023, suicide-risk report. The claims against the City Defendants essentially arise from (i) the May 2, 2023, search of Plaintiffs' apartment and (ii) the May 3, 2023, involuntary transport. It is unlikely that these events could generate liability against Defendants even if the Complaint is amended further, for the reasons explained in this Opinion & Order. If a proposed Second Amended Complaint does not plausibly plead new facts that (i) address the deficiencies identified in this Opinion & Order and (ii) show that Plaintiff is entitled to relief, an amendment may be futile, and the Court may deny leave to file a Second Amended Complaint.

## V.    CONCLUSION

For the foregoing reasons, the State Defendants' and City Defendants' motions to dismiss are **GRANTED**.  Defendant Frank Tarsillo's separate and supplemental motion to dismiss is **DENIED as moot**.  Plaintiff may seek to replead as provided above.

The Clerk of Court is respectfully directed to close the motions at Dkts. 73, 75 and 119, mail a copy of this Opinion & Order to Plaintiff and close the case.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion & Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal.  *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

Dated:  July 30, 2026
       New York, New York

                                 LORNA G. SCHOFIELD
                            UNITED STATES DISTRICT JUDGE